## In re BERMAN ENTERPRISES, INC., Debtor.

### Bankruptcy No. 190–15173–260.

United States Bankruptcy Court, E.D. New York.

Oct. 6, 1992.

Bosco, Bisignano & Mascolo by Anthony Morisano, Staten Island, NY, for Howard and Barbara Daniels.

Backenroth & Grossman by Abraham Backenroth, New York City, for debtor.

Freehill, Hogan & Mahar by Alexander F. Vitale, New York City, for West of England Ship Owners Mut. Ins. Ass'n.

Office of the U.S. Trustee by Alfred M. Dimino, Garden City, NY.

## MEMORANDUM DECISION

CONRAD B. DUBERSTEIN, Chief Judge.

This matter comes before this Court on the motion of Howard and Barbara Daniels (the "Daniels") for an Order declaring that Berman Enterprises, Inc., the debtor and debtor-in-possession ("Berman" or the "Debtor") is entitled to indemnification under Protection and Indemnity Insurance Policies ("P & I insurance" or "policies") issued by West of England Ship Owners Mutual Insurance Association ("West of England") to General Marine Transit Corp. ("General Marine"), for policy periods February 20, 1987 through February 20, 1990. After a hearing and for the reasons stated below, the motion is granted to the extent that the Debtor is entitled to indemnification as may be determined in arbitration proceedings instituted by West of England in London, England.

## FACTS

The Debtor is in the business of marine services. During the period of February 20, 1987 through February 20, 1990, West of England issued annual P & I policies to General Marine. The policies covered approximately thirty different vessels, including tugs and barges, operated or owned by affiliated companies of General Marine, including the Debtor, and named as additional or co-assureds.

Pursuant to the terms of the policies which provide for indemnification of the ship owners, it is required to first pay the claim or judgment against it and then seek reimbursement from West of England, less an applicable deductible.

In 1989, a dispute arose between West of England and General Marine concerning the late payment of premiums. West of England claimed that on February 29, 1990, the policy expired and was not renewed. As hereinafter appears, on December 6, 1990, it deemed the policy to have expired retroactively to February 20, 1987.

In April, 1990, the Daniels instituted an action against the Debtor, Standard Marine Transport Services, Inc. ("Standard Marine"), General Marine, and New England Merchants Funding Corp. in the Supreme Court of the State of New York, County of New York, for alleged psychological injuries Mr. Daniels Suffered during a fire and explosion aboard the barge LEO FRANK on November 4, 1987. The barge is owned by Standard Marine and operated by the Debtor. Both companies are affiliated with General Marine.

On November 8, 1990, the Daniels instituted a second action in state court against the Debtor, Waterways Towing, Inc., General Marine, Standard Marine, and the barge SAM BERMAN, *in rem*, seeking damages for alleged injuries suffered when Mr. Daniels fell on the SAM BERMAN on January, 17, 1988.

At the time of the alleged incidents, the Debtor or the other General Marine affiliates, which owned or operated both the SAM BERMAN and the LEO FRANK, were covered by the West of England policies. The

Debtor and co-defendants named in both Daniels' first and second suit, were listed as co-assureds on General Marine's policy with West of England. Both actions are still pending in the state court.

On November 19, 1990, the Debtor filed a petition for relief under Chapter 11. Both actions commenced by the Daniels were therefore stayed as against the Debtor pursuant to § 362 of the Bankruptcy Code. However, the actions were not stayed as against any of the non-debtor co-defendants.

On December 6, 1990, unaware of the pending Chapter 11 and the resultant automatic stay, West of England issued retroactive cancellations to General Marine of the P & I policies for February 20, 1987 through February 20, 1990. West of England claimed that the retroactive cancellation was due to the nonpayment of premiums and was permitted by West of England's Rules and the terms of the policies. General Marine disputed the retroactive cancellation.

The disputes between West of England and General Marine were referred to arbitration in London in 1991 pursuant to the arbitration provision in the West of England Rules, which are incorporated in the P & I Policies. Claims and counterclaims have been made by each party in the arbitration proceedings, which are still underway in London. These disputes have not yet been submitted to the arbitrator for decision. On June 3, 1991, West of England filed a motion to lift the automatic stay to refer any policy disputes between the Debtor and West of England to arbitration in London.

On July 5, 1991, the Daniels filed a motion requesting relief from the automatic stay, so that they could continue to litigate their two aforementioned personal injury actions against the Debtor, as well as the other non-debtor co-defendants.

On July 10, 1991, after a hearing on West of England's motion, this Court entered an Order directing that:

1. The rights of the Debtor, if any, as a co-assured under the West of England P & I policies, existing as of the filing of the petition, were not affected by any action by West of England, including the purported retroactive cancellation on December 7, 1990;

2. West of England's motion to lift the stay to refer any disputes between it and the Debtor arising under the P & I policies to arbitration in London was denied without prejudice to being renewed in the event an actual dispute between West of England and the Debtor arises; and

3. The stay was lifted to allow any injured parties or claimants to commence or continue any pending suits against the Debtor in state or federal court provided that such party stipulates it will seek recovery against the Debtor only to the extent that the Debtor is subject to indemnification by West of England, and West of England is free to interpose any defenses to said action, including the defense of arbitration in London.

In addition, in a letter to this Court, dated July 10, 1991, counsel for West of England, Freehill, Hogan & Mahar, stated that

West of England could not unilaterally, without first seeking to lift the stay, cancel, terminate or otherwise decrease the rights, if any of Berman Enterprises under the contracts of insurance existing as of the petition date and, to that extent, West of England's letter of December 7, 1990 regarding retrospective cancellation should be considered a nullity and of no effect or consequence with respect to the debtor.

Letter from West of England to Hon. Conrad B. Duberstein (July 19, 1991).

On June 13, 1992, the Daniels filed the present amended motion to vacate the automatic stay. The Daniels argue that the Court's prior Order of July 10, 1991 is ambiguous as to whether the Debtor is entitled to indemnification for the policy periods of February 20, 1987 through February 20, 1990.

## DISCUSSION

West of England, the insurer, is an association of ship owners who join together to provide insurance. *Triton Lines, Inc. v. Steamship Mut. Underwriting Ass'n,* 707 F.Supp. 277, 278 (S.D.Tex.1989). P & I insurance is not liability insurance, instead, the P & I policies require a ship owner to pay

the claim or judgment before seeking reimbursement under the applicable rules of the association. Unlike liability insurance which may have a fixed cap on the payouts for personal injury and other claims, a claimant under a P & I policy could potentially recover an amount equal to all the assets of the P & I association's members.

This Court's July 10, 1991, Order allows the commencement of suits against the debtor provided that the claimant stipulates that recovery will be sought *only to the extent* that the debtor is subject to indemnification by West of England. It must be noted that this is the relief which the Daniels seek by their motion. Therefore, inasmuch as the July 10, 1991 order clearly grants the relief requested, this Court finds no reason to modify its Order as it pertains to relief from the automatic stay.

■ In addition, the Daniels request that this court declare void *ab initio* West of England's attempt to retroactively cancel the indemnification policy. Not only has this issue already been addressed by the Court in its prior Order, but also it has been rendered moot by the letter of July 10, 1991, from West of England's counsel which states that the cancellation "should be considered a nullity and of no effect or consequence with respect to the debtor." In addition, § 362(a)(3) of the Bankruptcy Code automatically stays any post-petition attempt to cancel the P & I policies.[1]

■ While the retroactive cancellation of the P & I policies is void, any dispute as to the scope of coverage must be resolved in London pursuant to the arbitration clause contained in the contract between West of England and General Marine.

■ Title 9, section 2 of the United States Code, which deals with arbitration, renders a written agreement to arbitrate in any "maritime transaction or a contract evidencing a transaction involving commerce ... valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." This section has

been characterized by the United States Supreme Court as the centerpiece of the Arbitration Act, *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985), and as "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Therefore, it is well-settled that the federal arbitration statute requires that agreements to arbitrate be rigorously enforced. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985).

Additionally, in a case involving maritime law, the Second Circuit has stated that "[a]rbitration is an especially important and efficient means of dispute resolution in the maritime field ..." *See SCAC Transport (USA) Inc., v. S.S. Danaos,* 845 F.2d 1157, 1163 (2d Cir.1988) (citing Feinberg, **Maritime Arbitration and the Federal Courts,** 5 Fordham Int'l L.J. 245 (1982)). Thus, it should come as no surprise that the Arbitration Act requires enforcement when a maritime contract has an arbitration clause. 9 U.S.C. § 2; *Triton Lines,* 707 F.Supp. 277, 278 (S.D.Tex. 1989).

According to West of England, Rule 62 of the Association is incorporated in the P & I policies issued by them to General Marine and the co-assureds, and states:

If any difference or dispute shall arise between a Member of former Member or any other person claiming under these Rules and the Association out of or in connection with these rules or any Bye law made thereunder or arising out of any contract between the Member or former Member and the Association or as to the rights or obligations of the Association or the Member or former Member thereunder or in connection therewith or as to any other matter whatsoever, such difference or dispute shall be referred to arbitration in London of a sole legal arbitrator.... No Member or former Member may bring

---

1. § 362(a)(3) provides that the filing of a petition in Bankruptcy stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate".

or maintain any action, suit or other legal proceedings against the Association in connection with such difference or dispute unless he has first obtained an Arbitration Award in accordance with this Rule.

West of England's Memorandum at 14–15.

It would be improper for this Court to render any decision regarding the validity of the indemnification agreement in light of the Arbitration Act's guarantee to enforce private contractual arrangements. *See Mitsubishi Motors*, 473 U.S. at 625, 105 S.Ct. at 3353. The Supreme Court in *Mitsubishi Motors* determined that "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context." *Id.* at 629, 105 S.Ct. at 3355. In accordance with the Supreme Court's strong endorsement of federal statutes favoring arbitration as a method of resolving disputes, *Rodriguez De Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 481, 109 S.Ct. 1917, 1920, 104 L.Ed.2d 526 (1989), it is clear that the relief sought by the Daniels is not to be found in this forum, but is instead governed by the arbitration clause which West of England and General Marine agreed upon in their indemnification agreement.

■ Although bankruptcy courts have the discretion to refuse to enforce an arbitration agreement, it must first be demonstrated that a specific conflict exists between enforcing an arbitration clause and the provisions and purposes of the Bankruptcy Code. *See In re Double TRL, Inc.*, 65 B.R. 993 (Bankr. E.D.N.Y.1986); *In re Chorus Data Systems, Inc.*, 122 B.R. 845 (Bankr.D.N.H.1990). However, the Daniels have failed to show the existence of any such conflict. Any additional time and expense required by the arbitration process cannot compare to the virtue of enabling the parties to abide by their agreement. *Societe Nationale Algerienne v. Distrigas Corp.*, 80 B.R. 606, 614 (D.Mass.1987).

Furthermore, the actual parties involved in the arbitration, West of England and General Marine, are not subject to the automatic stay imposed by the Debtor's filing of a petition in bankruptcy. Therefore, the existence and scope of any indemnification agreement between General Marine and West of England, and the ability of West of England to interpose such defense, must be determined in the pending arbitration proceedings in London, England. As the Supreme Court warned in *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 9, 92 S.Ct. 1907, 1912, 32 L.Ed.2d 513 (1972), "[t]he expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts."

It should be noted that this Court's Order of July 10, 1991, which denied West of England's motion to refer disputes between it and the Debtor to arbitration in London was denied without prejudice to renew in the event an actual dispute arises pertaining to the P & I policies.

Paramount to this decision is the fact that, in a memorandum submitted by counsel for the Daniels, they state their willingness to pursue their causes of action and limit recovery to the extent that the Debtor is entitled to indemnification as may be determined in the arbitration proceedings instituted in London.

For the foregoing reasons, the Daniel's motion is hereby granted to the extent hereinabove set forth.

SUBMIT AN ORDER CONSISTENT WITH THIS OPINION.