In the Matter of the Arbitration between
**SEN MAR, INC., Petitioner,**

v.

**TIGER PETROLEUM CORPORATION,
Respondent.**

**No. 87 Civ. 8020 (DNE).**

United States District Court,
S.D. New York.

Oct. 11, 1991.

Healy & Baillie, New York City (Raymond A. Connell, LeRoy Lambert, Andrew V. Buchsbaum, of counsel) for petitioner.

Mudge Rose Guthrie Alexander & Ferdon, New York City (Audrey Strauss, Bart Timothy Schectman, of counsel) for respondent.

## OPINION AND ORDER

EDELSTEIN, District Judge:

Petitioner Sen Mar, Inc. ("Sen Mar") is a New York corporation with its principal place of business in New York. Tiger Petroleum Corporation ("Tiger") is a Netherlands Antilles corporation with its principal place of business in London, England. Both Tiger and Sen Mar are buyers and sellers of oil. Sen Mar has petitioned this Court for an order compelling Tiger to proceed to arbitration and for the appointment of an arbitrator under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). *See* 9 U.S.C. § 201 *et seq.* Tiger has moved to dismiss the petition under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Tiger's motion asserts that: (1) the arbitration clause is unenforceable because it is not an "agreement in writing" within the meaning of the Convention; (2) the underlying contract is not enforceable because it does not satisfy the statute of frauds; and (3) the Court cannot construe the language of Sen Mar's purported arbitration clause as a mandate to arbitrate.

### Background

Prior to July 17, 1987, Miguel Puga, an independent oil broker, and Carlos Gamboa, Sen Mar's authorized selling agent, had several discussions regarding the contents and location of a Sen Mar oil tanker. Puga, although not authorized to contract on Tiger's behalf, was authorized by Tiger to determine the availability and location of oil, which is known in the industry as cargo. Gamboa contends that he and Puga formed an oral contract while Puga contends that he has never, nor would he ever, contract on Tiger's behalf.

On July 17, Sen Mar sent Tiger two telexes that purportedly confirmed the agreement reached in the Gamboa–Puga conversations. The first telex contained quantity, price and time for delivery terms, as well as an acknowledgment that Tiger's bank, Paribas Bank, London, would furnish a letter of credit. The second telex was

more detailed, containing the terms of the first telex as well as terms that addressed payment, shipping details, inspection rights and losses. The second telex also provided that "Law: New York State Law, Arbitration, if any to be held in New York." Because these telexes were sent on a Friday afternoon, Tiger did not examine them until Monday, July 20.

On July 21, Puga informed Gamboa that Tiger had sent the telexes to Paribas and that Paribas objected to the payment term, which required Tiger's payment before Sen Mar's delivery of the oil. As a result, Puga and Gamboa orally agreed that Tiger would pay a greater price for the oil but would make payment after delivery of the oil. Sen Mar then sent a third telex to Tiger in which it renewed its request for a letter of credit.

On July 23, Tiger sent Sen Mar a telex informing Sen Mar that Tiger was having difficulty finding a buyer for the cargo. In addition, the telex stated that "meantime we have no possibility to issue any sort of document, due that cargo has not been concluded." Because Gamboa could not find a buyer for the cargo, Puga and Gamboa orally agreed to the new payment term at the original price.

Sen Mar then sent Tiger a telex in which it attempted to confirm the alleged contract and in which it also told Tiger that it had withdrawn cargo from the market in reliance on the agreement. At the time Sen Mar sent this telex, the price of crude oil per barrel had dropped more than one dollar. By July 24, the price of crude oil had again declined. On July 24, Tiger sent Sen Mar a telex that stated "with reference to your telex ... we hereby reemphasize that no cargo of crude oil has been concluded with Sen Mar Inc. No confirmation or reconfirmation exists at all between Tiger Petroleum Corp N.V. and Sen Mar Inc." On July 29, Sen Mar informed Tiger by telex that if Tiger did not receive a letter of credit by the next day, Sen Mar would sell the cargo and hold Tiger liable for losses.

When it failed to receive the letter of credit on July 30, Sen Mar sold the cargo on the market at a price per barrel that was thirty cents less than the price Tiger had allegedly agreed to pay. As a result of incurring these damages, Sen Mar informed Tiger of its intention to submit its claim to arbitration. Tiger replied that no contract existed between Sen Mar and Tiger and it therefore refused to submit to arbitration. After one more attempt to elicit a reply from Tiger to its arbitration demand, Sen Mar filed a petition with this Court to compel arbitration and appoint an arbitrator.

### The Court Will Treat Respondent's Motion as One for Summary Judgment

Federal Rule of Civil Procedure 12(b) permits a court to convert a motion to dismiss under Rule 12(b)(6) to a motion for summary judgment under Rule 56 if the parties present and the court considers matters outside the pleadings. The Rule further requires that the court give the parties an opportunity to present all material pertinent to the Rule 56 motion. *See* Fed.R.Civ.P. 12(b). Both Sen Mar and Tiger have submitted affidavits and exhibits in support and opposition to Tiger's motion to dismiss. Moreover, the parties' memoranda of law refer extensively to these materials. As a result, this Court will treat Tiger's motion as one for summary judgment under Rule 56. *See Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir.1988) (court must convert 12(b)(6) motion to one for summary judgment where it considers affidavits and factual allegations contained in memoranda of law).

Moreover, the parties are not entitled to an opportunity to submit more materials. This Court has already considered the affidavits of Puga, Gamboa and the Presidents of both Sen Mar and Tiger. In addition, this Court has examined all relevant telexes and the parties' memoranda of law. The second circuit has stated that by virtue of the submission of such materials, the parties "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment." *In re G & A Books, Inc.*, 770 F.2d

288, 295 (2d Cir.1985), *cert. denied sub nom., M.J.M. Exhibitors, Inc. v. Stern,* 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986). The court added that a "party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits" and memoranda of law concerning the motion. *Id.*

"It is well settled that a court should grant a motion for summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact." *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir. 1990); *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). The Supreme Court has stated that courts determine whether an issue is genuine and material for purposes of summary judgment by assessing "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) ("court may grant summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## I. The Arbitration Clause Does Not Satisfy the Convention's Writing Requirement

■ Section 202 of the Convention provides that "an arbitration agreement ... arising out of a legal relationship ... which is considered as commercial, falls under the Convention" unless the agreement is solely between United States citizens and has no connection to a foreign state. *See* 9 U.S.C. § 202. The Convention further provides that any party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court" that has subject matter jurisdiction over the dispute. *See* 9 U.S.C. §§ 4, 208 (1990). In addition, a court having jurisdiction under the Convention may appoint an arbitrator. *See* 9 U.S.C. § 206 (1990). The parties do not contest that the purported agreement between Sen Mar and Tiger falls under section 202 of the Convention. Tiger contends, however, that the purported arbitration clause does not satisfy the Convention's writing requirement, which defines a writing as "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters." Convention, Article II § 2.

Sen Mar does not, nor can it, allege that the arbitration clause contained in its July 17 telex has been "signed by the parties or contained in an exchange of letters." Instead, Sen Mar asserts that the provision is valid merely because it is in writing. In making such an argument, Sen Mar apparently relies on cases that have interpreted the United States Arbitration Act (the "Act") to permit enforcement of an arbitration clause if it is contained in a signed or unsigned writing. *See, e.g., Fisser v. International Bank,* 282 F.2d 231, 233 (2d Cir.1960).

These cases are not instructive, however, because while the Act requires a written arbitration agreement, it does not define a writing. As previously noted, the Convention actually defines what will satisfy its writing requirement. An arbitration clause is enforceable only if it is found in a signed writing or an exchange of letters. Because the Convention controls in case of any conflict between the Convention and the Act, this Court will enforce the arbitration clause only if it satisfies the Convention's more stringent requirement. *See* 9 U.S.C. § 208 (1990); *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil Co.,* 767 F.2d 1140, 1145 (5th Cir.1985).

Sen Mar's argument, therefore, is without merit on its face because the arbitration term appears only in Sen Mar's July 17 telex. It is not found in a signed writing nor is it found in an exchange of letters;

Tiger's responsive telexes are not only devoid of arbitration language, they also disavow the entire contents of Sen Mar's July 17 telexes. Furthermore, Sen Mar's reliance on cases under the Convention only undercuts its argument because these decisions involve situations where the arbitration language is found in a signed writing or an exchange of telexes. They do not deal with the enforceability under the Convention of an arbitration clause found in only one telex that the party to be charged did not sign and to which it objected. *See, e.g., Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir.1987) (arbitration clause valid under Convention because contained in exchange of telexes, some of which were signed, to which the parties did not object); *Beromun Aktiengesellschaft v. Societa Industriale Agricola "Tresse",* 471 F.Supp. 1163, 1165–70 (S.D.N.Y.1979) (arbitration clause valid where contained in exchange of letters).

## II. The Statute of Frauds Defense to Contract Enforcement

■ Even assuming that the arbitration clause is effective under the Convention, the clause is not enforceable because the underlying contract is not enforceable under New York's version of the Uniform Commercial Code ("UCC"). Because the Sen Mar–Tiger transaction involves the sale of goods for $500 or more, the New York Uniform Commercial Code's statute of fraud provisions governs the transaction. *See* N.Y.U.C.C. § 2–201 (McKinney 1964 & Supp.1988). Therefore, the contract is enforceable only if evidenced by a signed writing. The N.Y.U.C.C. provides that a merchant's confirmation of an agreement satisfies the statute unless "written notice of objection to its contents is given within ten days after it is received." N.Y.U.C.C. § 2–201(2) (McKinney 1964 & Supp.1988). Sen Mar contends that its July 17 telexes, in conjunction with Tiger's July 23 telex, is sufficient to satisfy the statute of frauds. Tiger does not dispute, and it is apparent to this Court, that the July 17 telexes, if not objected to, satisfy the statute of frauds. For instance, in *Apex Oil Co. v. Vanguard Oil & Service Co.,* 760 F.2d 417, 423 (2d Cir.1985), the court found that Apex's telex, which contained price, quantity and delivery terms, satisfied the N.Y.U.C.C. statute of frauds provisions. Sen Mar's telexes contain these and additional terms and so satisfy the statute's writing requirement.

■ Nevertheless, Tiger contends that its July 23 and July 24 telexes, far from confirming an agreement with Sen Mar, constituted objections to the July 17 telexes and thus are sufficient to bar enforcement of any agreement under the statute of frauds. The issue, then, is whether Tiger objected to the July 17 telexes in its July 23 and July 24 telexes. This Court finds such an objection.

The July 23 telex provides that "with references to the [July 17] telexes received from yourselves, we hereby inform ... you that we are still trying to see if it is possible to develop the purchase of crude oil from Sen Mar, as soon as we can achieve decision on this matter. We will let you know opportunely. Meantime, we have no possibility to issue any sort of document, due that cargo has not been concluded." The July 24 telex provides that "we hereby reemphasize that no cargo of crude oil has been concluded with Sen Mar Inc. No confirmation or reconfirmation exists at all between Tiger Petroleum Corp N.V. and Sen Mar Inc."

These telexes constitute objections within the meaning of N.Y.U.C.C. § 2–201(2). Sen Mar's own petition to this Court concedes that Tiger informed Sen Mar that no contract had been made. In addition, Sen Mar's July 23 reply telex to Tiger, in which it expressed surprise at Tiger's view that the parties had not concluded any binding agreement, reveals that Sen Mar understood the July 23 telex as a rejection of the contract; as such, it is an objection under the statute of frauds. Having effectively conceded Tiger's rejection of any binding obligation, Sen Mar cannot now assert the contradictory argument that Tiger's telexes are not objections for purposes of N.Y.U.C.C. § 2–201(2).

Furthermore, while Tiger's July 23 telex refers to its efforts to "develop the pur-

884

chase of crude oil," both this telex and the July 24 telex unequivocally object to the July 17 telexes insofar as they attempt to create enforceable agreements. This case is thus distinguished from *Perdue Farms Inc. v. Motts, Inc.*, 459 F.Supp. 7 (N.D.Miss.1978), where the court found that a telex did not constitute an objection because it referred to "the unavailability of credit terms, [which] suggests that such terms may have been earlier agreed upon." Taken together, Tiger's July 23 and 24 telexes do not suggest any such agreement. On the contrary, Tiger's July 24 telex is obviously an attempt to clarify its position refusing to be bound by the July 17 telexes. By virtue of such objections, the contract is unenforceable under the statute of frauds provision of New York's version of the UCC. *See, e.g., East Eur. Domestic Int'l Sales Corp. v. Island Creek Coal Sales Co.*, 572 F.Supp. 702, 705 (S.D.N.Y.1983).

This Court will not enforce an arbitration clause associated with an agreement, such as this one, that is incapable of enforcement. In *Brown v. Gilligan, Will & Co.*, 287 F.Supp. 766, 769 (S.D.N.Y.1968), the court stated that "since [an] arbitration provision is an integral part of [an] alleged contract, the issue as to whether the parties agreed to that provision requires us first to determine if a contract exists." *See also American Airlines, Inc. v. Louisville and Jefferson County Air Bd.*, 269 F.2d 811, 817 (6th Cir.1959) ("[I]f arbitration is to be compelled, the contract in which the agreement to submit to arbitration appears, as well as the arbitration provisions themselves, must be valid and enforceable in accordance with ordinary contract principles under applicable State and Federal law."); *Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp.*, 455 F.Supp. 211, 219 (S.D.N.Y.1978) (arbitration clause enforceable only if underlying contract is a viable document).

■ Sen Mar also contends that Tiger should be estopped from asserting a statute of frauds defense because Sen Mar sustained injury when it reasonably relied on Tiger's representation that it would pur-

chase Sen Mar's cargo. This argument is without merit. Tiger correctly points out that courts will reject a statute of frauds argument on promissory estoppel grounds only when necessary to prevent an unconscionable result. *See Philo Smith & Co. v. USLife Corp.*, 554 F.2d 34, 36 (2d Cir.1977). By indicating its refusal to be contractually bound within two days of receiving Sen Mar's telex, Tiger acted expeditiously under the circumstances and succeeded in avoiding an unconscionable result. While Sen Mar may have incurred losses by not selling the cargo in a declining market, this does not estop Tiger from asserting a statute of frauds defense. "The strongly held public policy reflected in New York's statute of frauds would be severely undermined if a party could be estopped from asserting it every time a court found that some unfairness would otherwise result." *Id.*

## Conclusion

Sen Mar's petition to compel arbitration and for the appointment of an arbitrator is denied. Tiger's motion to dismiss the petition is granted under a Rule 56 summary judgment standard. Because this decision is based on alternative grounds, that the arbitration clause fails to satisfy the Convention's writing requirement and that the underlying contract is unenforceable, this Court has not addressed whether Sen Mar's reference to arbitration constitutes a requirement that the parties submit their disputes to arbitration.

SO ORDERED