CHESHIRE PLACE ASSOCIATES; Marine Movements, Inc.; Standard Marine Transport Services, Inc.; Standard Marine Towing Services, Inc.; and Standard Marine Services, Inc.

v.

The WEST OF ENGLAND SHIP OWNERS MUTUAL INSURANCE ASSOCIATION (LUXEMBOURG) and The West of England Ship Owners Insurance Services Limited.

No. 91 CV 5156.

United States District Court,
E.D. New York.

March 5, 1993.

Stamell, Tabacco & Schager, New York City (Jared Stamell, of counsel), for plaintiffs.

LeBoeuf, Lamb, Leiby & MacRae, New York City (Taylor R. Briggs, Stephen H. Orel, of counsel), for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiffs, vessel and marine equipment owners and related corporations, brought this action against defendants, a "protection and indemnity" mutual insurance association (the Association) organized under the laws of Luxembourg, and its English management company, alleging (1) breach of contracts providing for insurance, (2) fraud, and (3) violations of the securities laws of the United States.

Defendants moved pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–307, to dismiss the complaint in favor of arbitration, or, in the alternative, to dismiss the fraud claims for failure to plead with sufficient particularity, and to dismiss the claims under the securities laws for failure to plead the existence of a security.

This court advised the parties by order dated September 3, 1992 that it proposed to treat the matter as one for summary judgment and invited them to file additional papers.

### I.

The Association is comprised of its members—owners, charterers, operators, and managers of vessels—who mutually insure certain of each others' risks. Members are entitled to insurance but are also subject to "Calls," money paid to the Association to cover the cost of claims by other members. The Association's relations with its members are governed primarily by its "Constitution" and its "Rules."

The Constitution provides in § 7(a) that every "Owner" who "enters" a vessel for insurance in the Association becomes a "Member" from the commencement of the period of insurance, "provided that there shall be no more than one Member" as to each vessel. If there is more than one Owner, such Owners "shall be deemed to be Joint Members and together constitute but a single Member." Notice to any one Joint Member is deemed notice to all, and the Joint Member whose name first appears in the Register of Members is "entitled to exercise all voting and other rights of the Joint Members."

Section 2(a) of the Constitution defines "Owner" as an "owner, owner in partnership, owner holding separate shares in severalty, part owner, mortgagee, trustee, charterer, operator, manager or builder of any vessel and any other person whatsoever interested in or in possession of any vessel."

Under Rule 31, a person wishing to become a Member must apply to enter the vessel. If the application is accepted, the vessel is entered as insured by the Association, which issues a Certificate of Entry to the applicant. Rule 33.

On July 16, 1986 "General Marine Transport Corporation, et" (General Marine), styling itself as "Owner/Operator" of thirty vessels, including the two concerned here, namely, the barge *Leo Frank* and the tug *Emily S,* filed with the Association an application to enter the vessels "for insurance in your Association."

The printed application provides, among other things, that

if this application for insurance is accepted by the Association the applicant owner will be bound by the Constitution and the Rules of the Association in force from time

to time, except in so far as such Rules may have been modified by any special terms set out in the Certificate of Entry.

It is undisputed that a Certificate of Entry was issued by the Association to General Marine as a "Member" (although the original of the Certificate has not been produced). It is also undisputed that the Certificate provides that the terms and conditions of the insurance afforded by the Association with respect to the vessels "are upon and in accordance with the Rules of the Association for the time being in force," except to the extent that they are modified by special terms set out in the Certificate. There is no contention that there were any such special terms in the Certificate.

The complaint alleges that plaintiff Cheshire Place Associates (Cheshire) is the owner of the *Emily S*, and plaintiff Standard Marine Transport Services, Inc. (Transport) the owner of the *Leo Frank*. Although the complaint says that the plaintiffs are "entitled to insurance rights," neither the complaint nor any other papers filed by plaintiffs state the source of these rights.

Plainly under the Constitution and Rules of the Association plaintiffs came to be entitled to whatever insurance rights they may have only by reason of the Association's acceptance of General Marine's application to enter the *Emily S* and *Leo Frank* as insured.

Rule 62 in effect for the policy years 1986–87 through 1988–89 provides for referral to arbitration in London if

> any difference or dispute shall arise between a Member or former Member and the Association out of or in connection with these Rules or arising out of any contract between the Member or former Member and the Association or as to the rights or obligations of the Association or the Member or former Member thereunder or in connection therewith or as to any other matter whatsoever.

The Rule also provides: "No Member or former Member may bring or maintain any action, suit or other legal proceedings against the Association in connection with any such difference or dispute unless he has first obtained an Arbitration Award in accordance with this Rule."

General Marine remained a member of the Association from 1986 until 1990, when the Association sought to cancel the insurance contract. Whether that cancellation was valid is the subject of pending arbitration proceedings in England in which all plaintiffs are participating.

## II.

The issues on the motion are governed by Chapter Two of the Federal Arbitration Act (the Act), 9 U.S.C. §§ 201 *et seq.*, which implemented the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the Convention), entered into force for the United States December 29, 1970, 21 U.S.T. 2517, T.I.A.S. No. 6997 (reprinted following 9 U.S.C.A. § 201 (1992 Supp.).

There are three prerequisites to enforcement of an arbitration agreement under the Convention: (1) The agreement must be in writing. Convention, Article II(1)–(2). (2) The agreement must arise out of a commercial relationship. 9 U.S.C. § 202. (3) At least one of the parties must not be an American citizen or the commercial relationship must have some connection with one or more foreign states. 9 U.S.C. § 202. In this case the three requirements are met.

Questions remain as to (1) whether plaintiffs are bound by the agreement, (2) whether the dispute falls within the scope of the agreement, and (3) whether the subject matter of this dispute is not arbitrable for some reason extraneous to the agreement. *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir.1987).

## A.

The terms of the agreement for insurance between General Marine and the Association are embodied in its Rules and its Constitution.

By signing the Application Form for entry and by the provisions of the Certificate, General Marine bound itself, as Member, and its Joint Members to abide by the Constitution and Rules, including Rule 62, requiring disputes to go to arbitration. Other persons

"interested" in the vessels, by reason of that interest, become co-owners and Joint Members that together with the applying Member "constitute but a single Member" and are also so bound.

Cheshire, as owner of the *Emily S*, and Transport, as owner of the *Leo Frank* are plainly co-owners and "Joint Members" with General Marine.

Plaintiffs, perhaps deliberately, refrain from specifying the other plaintiffs' interest in the two vessels. Defendants have submitted a "Certificate of Entry" dated January 16, 1992 showing plaintiffs to be "Joint Members" with the "Member," General Marine. Plaintiffs have submitted no affidavits or exhibits to dispute the accuracy of this information in the Certificate. In any event, plaintiffs have not identified any other relationship to the defendants to support their claim for insurance.

Plaintiff have made a miscellany of contentions in an effort to escape being bound by Rule 62.

■ First they argue that they are not bound because defendants have allegedly admitted in an unrelated bankruptcy proceeding that plaintiffs are "co-assureds" and not Members. They submit a portion of a transcript in which an attorney with no identifiable connection to the defendants in this case says: "General Marine was known as the member. There can only be one member. There can be co-insureds." Transcript at 19–20, *In the Matter of Standard Tank Cleaning Corp., Inc.,* No. 190–14015(11) (June 19, 1991). The statement was part of a general discussion of mutual marine insurance; the significance of the term "co-assureds" or "co-insureds" was not discussed.

As noted above, under § 7(a) of the Constitution discussed above there can only be "one Member"; but that one Member is composed of all the Joint Members. The statement in the bankruptcy proceeding has no pertinence to the present motion.

The term "co-assured" does not appear in the Constitution, and is not mentioned in the Rules until 1989. In that year Rule 36 was amended to include the term "co-assured" as follows:

Where a Certificate of Entry for an insured vessel records as parties insured thereunder more persons than one whether jointly or separately interested such persons are hereinafter referred to as 'co-assured' or 'co-assureds'. . . .

Before 1989 Rule 36, entitled "Joint Entries," referred only to the "Owner" or "joint Owners" and, in substance, stated that (1) delivery of one Certificate of Entry or Endorsement slip to one of the several joint Owners is sufficient delivery to all, (2) the joint Owners are jointly and severally liable to pay all calls, (3) the Association is entitled to decline indemnity to all joint Owners if the conduct of any one so justifies and (4) knowledge of a communication from the Association to one joint Owner is imputed to all.

The 1989 amendment to Rule 36 did not change these provisions with respect to Owners but recognized that a person, although not a joint Owner could be entitled to insurance, for example, as a third-party beneficiary. Thus a co-assured; if not also an Owner having an interest in the vessel, is not obligated to pay the Calls required of Owners. But the amendment also entitles the Association to decline indemnity to all Owners and/or all co-assureds if the conduct of any one so justifies.

Plaintiffs argue that this amendment and a 1989 amendment to Rule 62 give rise to an inference that, although they are somehow entitled to insurance rights, they were not bound by the arbitration provision until 1989. The amendment of that year to the first sentence of Rule 62 makes it read, "If any difference or dispute shall arise between a Member or former Member *or any other person claiming under these Rules and the Association* ... such difference or dispute shall be referred to arbitration" (amendment emphasized). Plaintiffs say that this created a new but not retroactive obligation on "co-assureds" to arbitrate.

As is evident from the earlier discussion, the argument rests on a false premise. Plaintiffs are not merely co-assureds; they are also Owners because of their interest in the insured vessels. *See* Constitution, § 2(a). They together with their fellow owners thus

constitute the single Member. As such by the terms of Rules 62 prior to the 1989 amendment they are bound to arbitrate.

Even if plaintiffs were not Joint Members, they would be obligated by the arbitration clause under contract principles because their rights derive from the application for insurance submitted by General Marine and accepted by the Association.

■ When a plaintiff "bases its right to sue on the contract itself, not upon a statute or some other basis outside the contract, the provision requiring arbitration as a condition precedent to recovery must be observed." *Wells Fargo Bank International Corp. v. London Steam–Ship Owners' Mutual Insurance Assoc.*, 408 F.Supp. 626, 630 n. 10 (S.D.N.Y.1976). This is true whether a plaintiff acquired rights under the contract as agent, third-party beneficiary, or assignee. *In re Oil Spill by the "Amoco Cadiz"*, 659 F.2d 789, 794 (7th Cir.1981) (finding signatory's agent bound by arbitration agreement); *Interpool Ltd. v. Through Transport Mut. Ins.*, 635 F.Supp. 1503, 1504–05 (S.D.Fla. 1985) (non-signatory third-party beneficiary bound by arbitration agreement); *Banque de Paris et des Pays–Bas v. Amoco Oil Co.*, 573 F.Supp. 1464, 1466 (S.D.N.Y.1983) (assignee bound by assignor's agreement to arbitrate absent notice to the contrary).

Plaintiffs also say they have no obligation to arbitrate because General Marine had no notice of the arbitration clause. They submit an affidavit from the officer, Peter Frank, who signed the application for membership on General Marine's behalf, swearing that he was not advised of the arbitration agreement and did not see a copy of the Rules until after 1990.

This argument is frivolous. In a separate paragraph directly above Frank's signature the application states, "if this application for insurance is accepted by the Association the applicant Owner will be bound by the Constitution and the Rules of the Association...."

■ Presumably Frank reads and understands English. Even if he does not, failure to read or investigate the terms of the contract one signs is not a defense to enforcement of the contract. *See Paper Express*

*Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753 (7th Cir.1992) (plaintiff bound by forum selection clause to litigate in Germany despite his ignorance of the provision, incorporated by reference and written in German); E. Allen Farnsworth, *Contracts*, § 3.7, at 116 (1982).

An agreement to arbitrate is enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) (party may avoid arbitration agreement resulting from "the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract' ") (citations omitted).

Plaintiffs have presented no grounds sufficient to avoid their contractual obligations. Even if plaintiffs were to claim that General Marine was induced by fraud to sign the application, that claim would be arbitrable. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406, 87 S.Ct. 1801, 1807, 18 L.Ed.2d 1270 (1967); *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir.1987).

Plaintiffs in addition contend that their rights stem from an investment contract represented by a prospectus and oral communications. But plaintiffs submit no exhibits identified as an investment contract or prospectus. There is no factual support for a source of plaintiffs' insurance rights other than the Constitution and Rules.

### B.

■ Plaintiffs contend that even if bound to arbitrate any dispute covered by Rule 62, their dispute is not so covered. The contention is meritless.

On its face the arbitration provision in Rule 62 applies to "any difference or dispute" between the Association and a Member arising "out of or in connection with these Rules or arising out of any contract ... or as to the rights or obligations of the Association" or any Member, or "in connection therewith or as to any other matter whatsoever." It is

hard to conceive of an arbitration clause with broader scope.

Plaintiffs' breach of contract claim clearly falls within this clause.

So too do plaintiffs' securities claims. As the Second Circuit has stated, even with respect to a less encompassing arbitration clause, "[i]f the allegations underlying the claims 'touch matters' covered by the [contract at issue] then those matters must be arbitrated, whatever the legal labels attached to them." *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir.1987) (citations omitted).

The complaint's allegations of facts underlying plaintiffs' three securities claims say that defendants asserted a right under the contract, which plaintiffs dispute, to cancel plaintiffs' insurance retroactively because "a corporation" (presumably General Marine) failed to pay amounts owed.

Plaintiffs' allegations of "untrue statements of material fact and omissions" in violation § 12(2) of the Securities Act of 1933 (the 1933 Act), 15 U.S.C. § 77*l*(2), and § 10(b) of the Securities Exchange Act of 1934 (the 1934 Act), 15 U.S.C. § 78j(b), amount to no more than statements that defendants violated their obligations under the Constitution and Rules. Specifically, plaintiffs contest the authority asserted by defendants to 1) terminate plaintiffs' right to insurance because of another corporation's failure to pay amounts demanded by defendants, 2) alter the terms of plaintiffs' insurance at will, 3) apply those alterations retroactively, 4) cancel plaintiffs' insurance retroactively, and 5) lawfully sell insurance. Plaintiffs repeat these allegations in support of their claim for fraud.

In support of their claim under § 7 of the Investment Company Act, 15 U.S.C. § 80a–7, plaintiffs allege that they were harmed by defendants' attempt to avoid liability under the contract.

Resolution of all these claims requires a determination of defendants' underlying obligations under the Constitution and Rules.

Even if there were doubt as to whether plaintiffs' claims are within the scope of Rule 62, such a doubt would be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

The arbitration clause covers the disputes asserted in the complaint.

### C.

Plaintiffs argue that even if the arbitration clause is broad enough to cover the disputes, the claims under the 1933 Act, the 1934 Act, and the Investment Act are not arbitrable as a matter of United States public policy.

Plaintiffs say that to submit the securities claims to an arbitrator in London would "undermine the enforcement of federal securities laws." The court assumes solely for the purpose of this discussion that the plaintiffs' interest in insurance under the Constitution and Rules constitutes a "security."

The Supreme Court in *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), rejected Soler Chrysler–Plymouth's argument that the public interest in enforcement of federal antitrust laws made its agreement to arbitrate all disputes in Japan unenforceable as to antitrust claims. The Court found that despite the important deterrent and remedial functions of the antitrust laws,

> concerns of international comity, respect for the capacities of foreign and international tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement.

473 U.S. at 629, 105 S.Ct. at 3355.

The presumption in favor of arbitration applies equally to plaintiffs' securities claims. In *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Court held that an agreement to arbitrate disputes before the International Chamber of Commerce in Paris covered the American plaintiff's claims against a German defendant under the 1934 Act. *See also Rodriguez de Quijas v. Shearson/American Express Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (arbitration agreement between Unit-

ed States citizens covered claims under § 12(2) of the 1933 Act); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (arbitration agreement between United States citizens covered claims under § 10(b) of the 1934 Act).

On the basis of these decisions this court will enforce the arbitration agreement as to the claims framed in terms of the securities laws.

If plaintiffs have rights under the securities laws, a matter which this court does not address, and if the arbitration award fails adequately to protect those rights, plaintiffs may challenge enforcement of the award. Under the Convention, a court may refuse to enforce an award that "would be contrary to the public policy of that country." Convention, Art. V(2)(b). *See Mitsubishi,* 473 U.S. at 637 n. 19, 105 S.Ct. at 3359 n. 19 (should arbitration award fail to address claimant's federal statutory rights, award would be "against public policy").

### III.

Defendants' motion for summary judgment is granted, and the complaint is dismissed in favor of arbitration.

So ordered.