Ronald **BORSACK**, a/k/a
Ron Bell, Plaintiff,

v.

**CHALK & VERMILION FINE ARTS, LTD., Sevenarts, Ltd., Chalk & Vermilion Fine Arts, LLC., and David Rogath, Defendants.**

**No. 96 CV 6587 (BDP).**

United States District Court,
S.D. New York.

Aug. 7, 1997.

Steven J. Popkin, Brooklyn, NY, for Plaintiff.

Guy Fairstein, Kurzman & Eisenberg, White Plains, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Plaintiff Ronald Borsack a/k/a Ron Bell ("Borsack") brings this breach of contract action against defendants Chalk & Vermilion Fine Arts, Ltd. ("Chalk & Vermilion"), Sevenarts, Ltd. ("Sevenarts"),[1] Chalk & Vermilion Fine Arts, LLC. ("Chalk & Vermilion–CT"), and David Rogath. Defendants removed this action, which was commenced in New York Supreme Court, County of New York, to this Court, pursuant to 28 U.S.C. §§ 1441, 1446, based on diversity jurisdiction. See 28 U.S.C. § 1332(a). Defendants subsequently asserted that in addition to diversity jurisdiction, the Court has jurisdiction over this action pursuant to the Convention for the Recognition and Enforcement of Foreign Arbitration Awards. See 9 U.S.C. §§ 203, 205. Presently before the Court are defendants' motion to stay the action pending arbitration and plaintiff's cross-motion to remand the action to state court. For the reasons stated below, defendants' motion for a stay pending arbitration is granted and plaintiff's motion to remand is denied.

Plaintiff is directed to inform the Court within ten days by letter of his intent to pursue his claims against Sevenarts.

---

1. Sevenarts, though named as a defendant in plaintiff's complaint, had not been served with process at the time of the filing of this motion.

## BACKGROUND

On September 23, 1987, Sevenarts and Chalk & Vermilion Fine Arts, Ltd.[2] entered into an agreement ("the License Agreement") pursuant to which Sevenarts licensed Chalk & Vermilion to cast and sell limited edition sculptures from models created by Romain de Tirtoff, the artist known as Erte ("Erte sculptures"). The License Agreement contains the following arbitration clause: "In the event of any claim or dispute between the parties concerning this Agreement, the parties irrevocably agree to submit to binding arbitration to take place in London before a single arbitrator."

On September 27, 1987, Sevenarts and Chalk & Vermilion modified the Agreement through a handwritten document ("the Addendum") that reads:

### Addendum

Sevenarts and Chalk & Vermilion agree to modify their contract of 9/23/87 as follows: 35 artists proofs shall be created rather than 30 artists proofs as previously indicated by clause 11. The parties shall divide the cost for the additional five casts and they shall be distributed to Ron Bell [a/k/a Ronald Borsack].

Clause 11 of the License Agreement states that "[t]hirty (30) 'artists proofs' shall be produced within each edition of sculpture and the License warrants that no more than 30 'artists proofs' will be produced within each edition." The Addendum was signed by David Rogath, president of Chalk & Vermilion, and Eric Estorick, then managing director of Sevenarts. Borsack did not sign either the License Agreement or the Addendum.

Borsack claims that before the execution of the License Agreement, he had, at the request of Rogath, helped convince the principals of Sevenarts to grant the exclusive licensing rights for the Erte sculpture to Chalk & Vermilion. According to Borsack, Rogath, over a series of discussions, promised to pay him a finders fee if his "efforts culminated in their [sic] being granted additional licensing agreements with Sevenarts.... Rogath agree[d] on behalf of [Chalk & Vermilion] to provide me with five Erte artist proof sculptures each time a new Erte sculpture was produced. It was further agreed that such five sculptures would be provided to me free of cost for resale purposes." Borsack Aff. ¶ 14. Borsack claims that he asked Rogath for written memorialization of their agreement and that Rogath subsequently delivered to him a photocopy of the Addendum. Borsack asserts that the Addendum was evidence of Chalk & Vermilion's oral agreement to pay him a "finders fee" of five artists proofs each time a new Erte sculpture was produced. Rogath denies having entered into any such agreement.

Borsack contends that after approximately six and a half years of receiving his "finders fee," defendants ceased to deliver the five proofs each time a new sculpture was produced. On July 16, 1996, plaintiff initiated this litigation in Supreme Court of the State of New York, County of New York, asserting, *inter alia*, breach of contract claims against Chalk & Vermilion and Sevenarts and a fraudulent conveyance claim against Chalk & Vermilion–CT.

On August 29, 1996, defendants removed the action to this Court claiming diversity jurisdiction under 28 U.S.C. § 1332(a). Defendants subsequently alleged federal question jurisdiction based on 9 U.S.C. § 203. Defendants now move, pursuant to 9 U.S.C. § 203, to stay the action pending arbitration in accordance with the Licence Agreement or, in the alternative, to dismiss the complaint. Borsack cross-moves for an order remanding the action to Supreme Court of the State of New York on the ground that this Court lacks subject jurisdiction over plaintiff's claims under both 28 U.S.C. § 1332(a) and 9 U.S.C. § 203. The parties have since stipulated that defendants' motion to dismiss would be held in abeyance pending the Court's resolution of the jurisdictional question.

---

**2.** Sometime after 1987, the assets of Chalk & Vermilion Fine Arts, Ltd. were acquired and its obligations were assumed by defendant Chalk & Vermilion Fine Arts, LLC., a Connecticut limited liability company.

## DISCUSSION

### A. Subject Matter Jurisdiction

██ Defendants, having invoked federal jurisdiction by removing the action to this Court, have the burden of proving that the case is properly in federal court. *See United Food & Commercial Workers Union v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994). If the removing party's "allegations of jurisdiction are challenged by [its] adversary in *any appropriate* manner, the removing party must support them by competent proof." *Id.* (emphasis in original) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)). The Court addresses both of defendant's asserted grounds for jurisdiction in turn.

Defendants initially removed this action based on diversity jurisdiction alleging that plaintiff is a citizen of Florida, while defendant Chalk & Vermilion is a citizen of New York, defendants Chalk & Vermilion–CT and Rogath are citizens of Connecticut, and Sevenarts is a citizen of England. Under 28 U.S.C. § 1332(a), a federal court has subject matter jurisdiction over cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant. *See Caterpillar Inc. v. Lewis*, —— U.S. ——, ——, 117 S.Ct. 467, 472, 136 L.Ed.2d 437 (1996); *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996).

██ For the purposes of diversity jurisdiction, a person's citizenship is determined by his domicile. *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 828, 109 S.Ct. 2218, 2220–21, 104 L.Ed.2d 893 (1989). Domicile requires two elements: the party's physical presence in the state and the intent to remain in the state indefinitely. *See National Artists Management Co. v. Weaving*, 769 F.Supp. 1224, 1227 (S.D.N.Y.1991) (citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989); *Gutierrez v. Fox*, 966 F.Supp. 214, 217 (S.D.N.Y.1997)). "Although a person may have more than one residence, [he] may only have one domicile at any one time." *National Artists*, 769 F.Supp. at 1227. Where there is evidence that the party has more than one residence, a court should focus on where the party intends to remain. *See id.* When determining whether a party has the intent to remain indefinitely in a state, a court should consider the following factors: voting registration; place of employment; current residence; location of real and personal property; location of spouse and family; driver's license; automobile registration; location of bank account; payment of taxes; tax return address; and location of a person's physician. *See* 3 Moore's Federal Practice ¶ 102.36[1]; *see also National Artists*, 769 F.Supp. at 1228; *Boston Safe Deposit & Trust Co. v. Morse*, 779 F.Supp. 347 (S.D.N.Y.1991).

██ Although plaintiff's opposition papers are notably silent as to a number of those factors, the weight of the objective indicia suggests that, at the time the action was removed, plaintiff intended to remain in New York indefinitely. Plaintiff lives for the majority of the year in New York and has lived at the same address in New York City for the past seventeen years. He works in New York, operating and managing an art gallery in New York City. His attorney, accountant, dentist and doctor all reside or practice in the New York City metropolitan area. Meanwhile, the only factors asserted by defendants in support of their contention that Borsack is a domiciliary of Florida is Borsack's wife's ownership of property in Florida, against which the Internal Revenue Service filed a tax lien naming Borsack as taxpayer, and Borsack's possession of a Florida driver's license.

On balance, considering the totality of the evidence, I conclude that plaintiff was domiciled in New York when this action was filed and at the time of removal. Because defendant Chalk & Vermilion was incorporated in New York and had its principal place of business in New York, the citizenship of the parties was not diverse. *See United Food*, 30 F.3d at 302 ("a corporate entity['s][ ] citizenship is determined by its place of incorporation or its principal place of business").

██ Defendants, however, further contend that federal question jurisdiction also exists under chapter 2 of the Federal Arbitration

Act ("the Act"), 9 U.S.C. §§ 201–208. Chapter 2 of the Act affords district courts original jurisdiction, regardless of the amount in controversy, over any "action or proceeding falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards]." 9 U.S.C. § 203. An action will fall "under the Convention" for the purposes of establishing federal question jurisdiction if it involves an

> arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial.... An agreement or award arising out of such a relationship, which is entirely between citizens of the United States, shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.... A corporation is a citizen of the United States if it is a incorporated or has its principal place of business in the United States.

9 U.S.C. § 202. Thus, three basic requirements must be met for a district court to find jurisdiction under the Convention: "the award (1) must arise out of a legal relationship (2) which is commercial in nature and (3) which is not entirely domestic in scope." *Cargill Int'l S.A. v. M/T Pavel Dybenko,* 991 F.2d 1012, 1018 (2d Cir.1993); *see Cheshire Place Assocs. v. West of England Ship Owners Mut. Ins. Ass'n,* 815 F.Supp. 593, 595 (E.D.N.Y.1993).

▪ Here, the parties do not contest that the underlying License Agreement between Chalk & Vermilion, a New York corporation, and Sevenarts, a corporation organized under the laws of England, satisfies those three requirements. Rather, Borsack contends that his claims against the defendants do not allege a breach of the License Agreement, but rather a breach of a verbal agreement into which he had entered with Rogath prior to the execution of the License Agreement. Borsack thus argues that the action does not fall under the purview of the Convention.

▪ Borsack, however, concedes that the alleged verbal agreement, pursuant to which Rogath would pay him five artist proof sculptures upon the production of each new edition of the Erte sculpture, is documented in the Addendum. *See* Complaint ¶ 4. Borsack further does not dispute that the alleged verbal agreement was incapable of performance within one year and would fail to satisfy the Statute of Frauds absent such memorialization. See Restatement § 110(1)(2); *see also* New York General Obligations Law § 5–701(a)(1).[3] Here, the terms of the Addendum are substantially the same as those of the alleged oral agreement, identifying the parties, describing the subject matter—the five artists proofs—and stating the essential terms of that agreement. Where a written agreement is reduced to a writing which, "in view of its completeness and specificity reasonably appears to be a complete agreement, it is to be taken to be an integrated agreement" which discharges prior agreements to the extent they are within its scope. Restatement §§ 209, 213; *see Moloney v. Weingarten,* 118 A.D.2d 836, 500 N.Y.S.2d 320, 322 (2d Dep't 1986).

Moreover, an examination of the Complaint belies Borsack's contention that his breach of contract claims arise out of the oral agreement and not the written Addendum. Both the first and second causes of action in Borsack's complaint allege the violation of the terms of the Addendum, making specific reference to the written document itself.[4] In

---

3. "A contract is not 'to be performed within a year' if it is terminable within that. time only upon the breach of one of the parties." *Ohanian v. Avis Rent A Car, Inc.,* 779 F.2d 101, 105 (2d Cir.1985). Where an alleged contract, as here, is indefinite as to duration and does not, by its terms, permit the defendant to discharge its performance obligations in less than one year, the statute requires a writing setting forth the essential terms of the agreement. *See City of Yonkers v. Otis Elevator Co.,* 649 F.Supp. 716, 727 (S.D.N.Y.1986).

4. The Complaint charges that
 ● "no less than 15 different new versions of Erte sculptures have been produced by defendant CHALK and sold to the general public, without the requisite five Artist Proofs per version of Erte sculpture being distributed to plaintiff as required pursuant to the terms of Supplemental Agreement." Complaint ¶ 17.
 ● "defendants have produced an additional number of versions of Erte sculpture [sic] for future distribution to the public without providing the required five Artist Proofs per ver-

addition, Borsack charges Sevenarts with breach of contract although, according to Borsack, Sevenarts was not a party to the oral agreement but was a party to the License Agreement and Addendum. In essence, Borsack seeks enforcement of one portion of the License Agreement, while seeking to avoid another provision of the Agreement, namely the arbitration clause. "This situation is hardly unknown in the context of arbitration agreements." *Filanto, S.p.A v. Chilewich Int'l Corp.*, 789 F.Supp. 1229, 1240 (S.D.N.Y.1992), *app. dismissed*, 984 F.2d 58 (2d Cir.1993) (citing *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F.Supp. 688, 692 (S.D.N.Y.1966)). "[T]he plaintiff[ ] cannot have it both ways. [He] cannot rely on the contract, when it works to [his] advantage, and repudiate it when it works to [his] disadvantage." *Tepper*, 259 F.Supp. at 692. Thus, it is to the language of the Addendum to which the Court must look to determine the rights, if any, of the respective parties.

■ Under the Addendum, Sevenarts and Chalk and Vermilion explicitly agree to "modify their contract of 9/23/87, [the License Agreement]." Insofar as the Addendum was clearly intended to be read with the

contract and hence constituted a modification of the original contract the agreement to arbitrate in the original License Agreement extends to the Addendum. *See Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966, 970 (2d Cir.1975); *American Home Assurance Co. v. American Fidelity & Casualty Co.*, 356 F.2d 690, 691–92 (2d Cir.1966).

Borsack nonetheless contends that even if the Court finds that his claims arise out of the License Agreement, he is not bound by the arbitration clause because he "has not signed any document or in any fashion consented to or agreed to have this matter arbitrated instead of heard by a Court of law." Borsack Reply Aff. ¶ 3. Defendants, in turn, argue that because plaintiff seeks to enforce the License Agreement as a third-party beneficiary, plaintiff is bound by the Agreement's arbitration clause.

■ Our Court of Appeals has rejected the proposition that only signatories to an arbitration agreement can be bound by its terms, applying instead ordinary principles of contract and agency to determine which parties are bound by an agreement to arbitrate.[5] *See Spear, Leeds & Kellogg v. Central Life*

---

sion to plaintiff, in violation of the express terms of the Supplemental Agreement."
● "the number of additional versions of Erte sculptures produced and sold privately by defendants without sale to the general public and without turnover of the 5 Artist Proofs per version as required by the Supplemental Agreement is approximately 40."
The Court's review of plaintiff's Complaint reveals no specific allegations of breach of the alleged oral agreement.

5. Plaintiff urges that the Court apply New York law, which arguably imposes a heavier burden on a party seeking to compel arbitration than does its federal counterpart, *see Filanto*, 789 F.Supp. at 1235, to determine whether he is bound by the License Agreement's arbitration clause. Under New York law, parties to a contract will not be held to have chosen arbitration "in the absence of an express, unequivocal agreement to that effect." *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir.1993). Our Court of Appeals, however, has explicitly held that section 2 of the Arbitration Act preempts that rule, and has instead applied the preponderance of the evidence standard to determine whether an arbitration agreement exists. *See Progressive Casualty*, 991 F.2d at 46; *Filanto*, 789 F.Supp. at 1234

(applying federal law to issue of whether an "agreement in writing" existed between the parties).

Thus, where jurisdiction is alleged under chapter 2 of the Federal Arbitration Act the issue of enforceability and validity of the arbitration clause is governed by federal law. See *Beromun*, 471 F.Supp. at 1169; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)) (in determining whether the parties agreed to arbitrate a dispute, the court is to apply the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [Federal Arbitration] Act").

The Court notes, however, that the application of federal law does not render state law irrelevant to the present analysis. "In general, federal courts developing federal common law are free to borrow from state law, unless there is either a demonstrated need for uniform national rule or a significant conflict between state law and some discernable federal policy." *McCarthy v. Azure*, 22 F.3d 351, 356 (1st Cir.1994); *see United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728–30, 99 S.Ct. 1448, 1458–60, 59 L.Ed.2d 711 (1979).

*Assurance Co.,* 85 F.3d 21, 26 (2d Cir.1996) (insurer could invoke arbitration provisions in stock exchange's constitution as third-party beneficiary of agreement between member of stock exchange and stock exchange); *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 845 (2d Cir.1987); *McAllister Bros. Inc. v. A & S Transp. Co.,* 621 F.2d 519, 524 (2d Cir.1980); *see also Lippus v. Dahlgren Mfg. Co.,* 644 F.Supp. 1473, 1482 (E.D.N.Y.1986).

■ Under general contract principles, "non-signatories [ ] fall within the scope of an arbitration agreement where that is the intent of the parties." *McPheeters v. McGinn, Smith & Co.,* 953 F.2d 771, 772 (2d Cir.1992) (per curiam); *see Cargill,* 991 F.2d at 1019. Thus, when a plaintiff who acquires rights under a contract as an agent, third-party beneficiary, or assignee subsequently "bases [his] right to sue on the contract itself the provision requiring arbitration as a condition precedent to recovery must be observed." *Cheshire Place Assocs.,* 815 F.Supp. at 597; *see Speer. Leeds,* 85 F.3d at 26 (third-party beneficiary to contract) *Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1359 (2d Cir.1993) (agents of an entity party to an arbitration agreement are protected by that agreement); *Banque de Paris et des Pays–Bas v. Amoco Oil Co.,* 573 F.Supp. 1464, 1469 (S.D.N.Y. 1983) (assignee of party to contract).

■ A third-party beneficiary exists "only if the parties to that contract intended to confer a benefit on him when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to him." *McPheeters,* 953 F.2d at 773. It must appear " 'that no one other than the third party can recover if the promisor breaches the contract' or the contract language should otherwise clearly evidence 'an intent to permit enforcement by the third party.' " *Artwear, Inc. v. Hughes,* 202 A.D.2d 76, 615 N.Y.S.2d 689, 692 (1st Dep't 1994) (quoting *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,* 66 N.Y.2d 38, 495 N.Y.S.2d 1, 5, 485 N.E.2d 208, 211–12 (1985)); *see* Restatement (Second) of Contracts § 308 cmt. a (1981).

Here, the Addendum specifically names Borsack, stating that the parties to the contract "shall divide the cost for the additional five casts and they shall be distributed to Ron Bell [a/k/a Ronald Borsack]." It is clear from that language that no one other than Borsack would be entitled to recover if the parties failed to distribute the additional five casts. Accordingly, I find that Borsack is an intended third-party beneficiary of the License Agreement, as amended, and can be compelled to abide by the arbitration provision therein.

■ In a final attempt to defeat jurisdiction under 9 U.S.C. § 203, Borsack argues that the License Agreement's arbitration clause, as applied to him, fails to satisfy the Convention's requirement of an "agreement in writing" to arbitrate because he was not a signatory to the License Agreement or the Addendum.

The Convention provides that contracting states "shall recognize an agreement in writing under which the parties undertake to submit to arbitration." Convention Art. II § 1. The Convention defines "agreement in writing" as including "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." Convention, Article II § 2; *see Sphere Drake Ins. PLC v. Marine Towing, Inc.,* 16 F.3d 666, 669 (5th Cir.1994); *Filanto,* 789 F.Supp. at 1235. Borsack postulates that the written agreement requirement mandates that the agreement be an "actual written arbitration agreement entered into by the parties" to the litigation.

Although our Court of Appeals has not yet had occasion to interpret the Convention's writing requirement, other courts that have addressed the issue have not read the requirement as narrowly as plaintiff would suggest. The Fifth Circuit, the only Court of Appeals that has directly interpreted the phrase, explicitly rejected a reading that defined "agreement in writing" only as "(1) a contract or other written agreement signed by the parties or (2) an exchange of correspondence between the parties demonstrating consent to arbitrate." *Sphere Drake Ins. PLC v. Marine Towing Inc.,* 16 F.3d 666, 669 (5th Cir.1994). The court instead found that the phrase followed by the comma—"signed by the parties or contained in an exchange of

letters or telegrams"—modified only "arbitration agreement" and not "arbitration clause in a contract." Thus, the Fifth Circuit construed the Convention's definition to include either (1) an arbitral clause in a contract or (2) an arbitration agreement that is either (a) signed by the parties or (b) contained in an exchange of letters' or telegrams. *See Sphere Drake,* 16 F.3d at 669; *see also Beromun Aktiengesellschaft v. Societa Industriale Agricola "Tresse" Di Dr. Domenico E Dr. Antonio Dal Ferro,* 471 F.Supp. 1163, 1170 (S.D.N.Y.1979) (holding that while the Convention "requires a writing[,][i]t need not be signed [ ] and ordinary contract principles dictate when the parties are bound by a written arbitration provision absent their signatures"). Under that construction, because the License Agreement contains an arbitral clause, the qualifications applicable to "arbitration agreements" do not apply, and a signature is not required. *See Sphere Drake,* 16 F.3d at 670.

Yet, a more restrictive reading of the writing requirement would not warrant a different result in this case. In *Sen Mar, Inc. v. Tiger Petroleum Corp.,* 774 F.Supp. 879 (S.D.N.Y.1991), the court construed the "agreement in writing" requirement to mean that an arbitration clause is enforceable only if it is found either in (1) a signed writing or (2) an exchange of letters. *See Sen Mar,* 774 F.Supp. at 882.[6] Plaintiff, relying on the construction articulated in *Sen Mar,* argues that since defendants do not allege that the arbitration clause can be found in an exchange of letters, the clause must be found in a writing that plaintiff himself signed.

The *Sen Mar* court, however, did not impose a requirement that only signatories to an arbitration agreement can be bound by such agreement, but rather held that the arbitration clause to be enforceable had to appear in a signed writing. Thus, under Sen Mar, once a party establishes that, indeed, a signed writing reflecting the agreement to arbitrate exists, the general rules of contract law apply to determine which parties are subject to arbitration. As discussed earlier,

courts applying those general contract principles have held third-party beneficiaries to the arbitration provisions in contracts under which they sue. The writing requirement does not foreclose the application of the well-established contract and agency principles under which nonsignatories sometimes can be obligated by, or benefit from agreements signed by others. *See Roby,* 996 F.2d at 1360 (arbitration clause applicable to nonsignatory agent of signatory corporate entity); *Fisser v. International Bank,* 282 F.2d 231, 233–34 (2d Cir.1960); *cf. · McCarthy,* 22 F.3d at 356. Indeed, our Court of Appeals, in addressing the question of subject matter jurisdiction under the Convention, has stated that where a plaintiff "is found to be a third party beneficiary to the [contract containing the arbitration clause], it may be proper for the district court to enforce the arbitration agreement against the [defendant]." *Cargill Int'l,* 991 F.2d at 1020. *Cf. Recold, S.A. v. Monfort of Colorado, Inc.,* 893 F.2d 195, 197 (8th Cir.1990). I therefore find that the License Agreement, as applied to Borsack, satisfies the Convention's writing requirement and that this Court has jurisdiction over plaintiff's claims under 9 U.S.C. § 203.

**B. Scope of the Arbitration Clause**

 Having determined that Borsack was a third-party beneficiary of the License Agreement and that this Court has jurisdiction over the action under 9 U.S.C. § 203, the Court must next determine whether the scope of the agreement to arbitrate encompasses the claims raised in Borsack's complaint. As our Court of Appeals has recently noted, "certain understandings govern any discussion of arbitrability. First and most importantly, 'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Spear, Leeds,* 85 F.3d at 28 (quoting *Moses H. Cone Memorial Hospital,* 460 U.S. at 24–25, 103 S.Ct. at 941–42). That is, arbitration "must not be denied unless a court is positive that the clause it is examin-

---

6. In *Sen Mar,* unlike the case at hand, court was faced with the threshold question of whether a series of letters satisfied the writing requirement, and thus whether an agreement to arbitrate even

existed. Here, as noted earlier, the parties do not contest that the Licences Agreement falls squarely under the reach of the Convention.

ing does not cover the asserted dispute." *Spear, Leeds,* 85 F.3d at 28; *see Progressive Casualty,* 991 F.2d at 48. Second, because the Court is interpreting a contract, the Court's construction "must ascertain and implement the reasonable expectations of the parties who undertake to be bound by its provisions ... Despite the presumption of arbitrability, the strong federal policy favoring arbitration may not extend the reach of the arbitration beyond the intended scope of the clause providing for it." *Id.* (citations omitted). Third, the Court's analysis should not be influenced by the merits of Borsack's claims against the defendants. *See id.*

Here, the arbitration clause states, in relevant part, that "[i]n the event of any claim or dispute between the parties concerning this Agreement, the parties irrevocably agree to submit to binding arbitration to take place in London." Borsack contends that, as that provision reads, its application is strictly limited to the "parties" to the License Agreement, namely Sevenarts and Chalk & Vermillion, and does not extend to him as a nonsignatory.

This argument simply repeats his contention that nonsignatories are not bound by an arbitration agreement. "The right of a third person for whose benefit a promise is made is affected with all the infirmities of the agreement as between the parties thereto." Samuel Williston, A Treatise on the Law of Contracts § 364A (Walter H.E. Jaeger ed., 3d Ed. 1959) [hereinafter Williston on Contracts]. Thus, language limiting application of an arbitration clause to the parties to the contract has not precluded application of such clauses to nonsignatories so long as such persons were intended beneficiaries of the contract. *See McAllister,* 621 F.2d at 524; *McEntee v. Ormes Capital Markets, Inc.,* 1995 WL 716734 *4–*5; *see also* Williston on Contracts § 364A ("Where the contract contains an arbitration clause which is legally enforceable, the general view is that the beneficiary is bound thereby to the same extent that the promisee is bound."). I therefore find that plaintiff's breach of contract claims, which certainly involve a dispute that "concerns th[e] Agreement," fall within the scope of the clause.

## CONCLUSION

For the reasons stated above, defendants' motion for a stay pending arbitration is granted and plaintiff's motion for remand is denied.

SO ORDERED.