TRITON LINES, INC., et al., Plaintiffs,

v.

STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION (Bermuda) Limited, Defendant.

Civ. A. No. H–88–3504.

United States District Court,
S.D. Texas,
Houston Division.

Feb. 15, 1989.

Stuart B. Collins, Sharpe & Kajander, Houston, Tex., for plaintiffs.

Kenneth D. Kuykendall, Royston, Rayzor, Vickery & Williams, Houston, Tex., for defendant.

## OPINION ON SUMMARY JUDGMENT

HUGHES, District Judge.

### 1. *Introduction.*

■ An arbitration clause in an insurance contract between an insured in Texas and an insurance company in Bermuda is enforceable against multiple state law claims, including those arising under the consumer protection sections of the Texas Insurance Code despite the McCarran Act.

### 2. *Background.*

Triton Lines, Inc., and Triton Transworld Navigation, Inc., as shipowners have sued Steamship Mutual Underwriting Association (Bermuda) Limited for its refusal to pay claims for the loss of the M.V. *Triton Trader.*

As is frequently the case in maritime insurance, the insurer is an association of shipowners who engage in providing insurance. The association is referred to as the club, and the insured is the member. To obtain coverage, the member enrolls a vessel with the club. The rules of the club and the quotation are the contract of insurance. The member's fee for obtaining the coverage is the fee plus assessments (calls) that the club makes if the claims exceed the pool accumulated through the annual assessments. A member's assessment is based on the size and nature of its fleet. Because a call is possible, the wealth of the members is of crucial importance to the club and its members. This club included in its rules both a choice of English law and an arbitration requirement.

Triton has refused to abide by the arbitration clause. The club has moved to stay this action until the arbitration has been completed. The club contests jurisdiction and convenience of this forum, but it is more economical to resolve the arbitration issue first.

### 3. *Ignorance.*

■ Triton argues that it is not bound by the provisions in the rules because some of the officers of the corporation have sworn that they did not know of the arbitration requirement. Although actual ignorance of both a term and a practice common in maritime insurance by a shipowner will probably fail to relieve it of its responsibility, the easy answer is that the issue of whether Triton is bound by the rules of the club must be submitted to the arbitrator. *Houston General Insurance Co. v. Realex Group, N.V.,* 776 F.2d 514 (5th Cir.1985).

### 4. *Arbitration Act.*

■ The Federal Arbitration Act requires enforcement when a maritime contract has an arbitration clause. A contract of protection and indemnity insurance covering a vessel between an American insured (member) and a foreign insurer (club) is a maritime contract. Federal Arbitration Act, 9 U.S.C. § 1 (1982); *Insurance Co. v. Dunham,* 78 U.S. (11 Wall.) 1, 20 L.Ed. 90 (1871).

■ State created rights coupled with a state prohibition of arbitration in the same act was the heart of the *Southland* decision. When an action involving interstate, foreign, or maritime commerce pends in federal court, the supremacy clause allows the exercised commerce clause power of the arbitration act to force arbitration. *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Commerce Park at D.F.W. Freeport v. Mardian Constr. Co.,* 729 F.2d 334 (5th Cir.1984).

### 5. *McCarran–Ferguson Act.*

Triton urges that the Federal Arbitration Act does not apply to this contest since

another federal statute abandons the field of regulation of the business of insurance to the states. McCarran–Ferguson Act, 15 U.S.C. § 1011 (1982).

A disputed claim is not the business of insurance. The business of regulating the insurance industry focuses on the underwriting and spreading of the policyholder's risk. *Group Life & Health Ins. v. Royal Drug Co.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). "[S]tate regulation of a practice of an insurance company does not mean that the practice is the 'business of insurance.'" *Id.* at 230, 99 S.Ct. at 1082. The McCarran Act has never been held to have abrogated federal procedural practices in federal court cases. The anti-arbitration provision of the Texas Insurance Code, therefore, is countermanded by the Federal Arbitration Act. *See Life of America Ins. Co. v. Aetna Life Ins. Co.*, 744 F.2d 409 (5th Cir.1984).

An analogous problem has developed under ERISA. State law claims under ERISA are preempted except those arising out of the regulation of the business of insurance. The consumer protection provisions of the Texas Insurance Code are not regulations of the business of insurance. After all, a state could avoid a federal preemption by simply putting the statutes into a section of the state's statutes dealing with a general unaffected subject. It is the actual subject that controls whether a state action is preempted, not the label. *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1985); Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132, 1144.

In one case the McCarran Act was held to bar arbitration of a contract between an insurance company under a New York liquidator and one under an Illinois liquidator. *Washburn v. Corcoran*, 643 F.Supp. 554 (S.D.N.Y.1986). The federal court in New York sided with the New York receiver, denying arbitration to the Illinois receiver; however, that case is an excellent example of the dangers of allowing the Congressionally supported parochialism to spread. Contrary to the court's holding, no question arose over the states' regulation of the business of insurance; rather it was a simple contract performance dispute that happened to fall between two state agencies.

New York State's statute purported to give it a free out of any contract term it found burdensome when it was liquidating an insurance company. In an equitable proceeding kin to bankruptcy the state can marshal the assets and pay claims according to their state law priority, but the contract clause prohibits it from unilaterally cancelling contracts under its administration. *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977); U.S. Const. Art. I, § 10, cl. 1.

Assume that Illinois had a similar statute to New York's. Both states purport to rule the world through the McCarran-sanctified arbitrary procedure that each has decided is in its "public interest." Conflicts between the states over the types and amounts of reserves an insurance company must keep to do business in each state are permitted by the McCarran Act despite the interstate character of the affected business. When the dispute is cognizable under the federal judicial power, like a maritime insurance contract, however, the latitude Congress gave the states over the conduct of the business of insurance does not extend to a jurisdictional exception for secondary contract enforcements. If an Illinois resident has a contract to provide computer services to a New York insurance company in liquidation, the McCarran Act does not require a federal court in New York to dismiss an action on the contract brought under its diversity jurisdiction.

6. *Conclusion.*

The questions arising under the apparent contract of maritime insurance must be submitted to arbitration before they can be considered in this court. This action will be stayed.