ALMON, Justice.
Beverly Dees petitions this Court for a writ of mandamus directed to the Honorable Ferrell D. McRae, Judge of the Mobile County Circuit Court. Judge McRae granted a stay of proceedings in a declaratory judgment action filed by Dees pending arbitration of the underlying dispute over coverage under a policy of marine insurance, and Dees seeks to have the stay set aside. The declaratory judgment action named as defendants Aarco Insurance Agency, Inc.; North American Fishing Insurance Mutual Association, Limited (“NAFIMA”); and N-Surance Outlets, Inc.
Beverly Dees owns a shrimp boat, the Captain Bill. On August 2, 1990, she applied, through Aarco, for insurance on the boat. The application was handled through insurance brokers, and a “cover note” was issued on September 14, 1990, whereby a London broker notified N-Su-rance Outlets, Inc., that “In accordance with your instructions we have effected insurance” with NAFIMA. The cover note stated that the insurance was
“subject to the rules of the Association and is also Conditional upon the Association approving within 15 days of date of entry[:]
[[Image here]]
“3) Condition and Valuation survey, not more than six months old, (to include Photographs of the vessel) from an approved surveyor. Under any circumstances wherein the survey submits recommendations which the Managers feel will need to be complied with in order that the vessel be acceptable for entry, the Association will require that the confirmation of compliance be by the original or an approved surveyor, and at the owner’s expense. Unless advised to the contrary the entry will exclude all claims for loss, damage, liability, costs or expenses arising directly or indirectly as a consequence of failing to comply with the recommendations.
“The entry will be cancelled, effective date of entry, if the above requirements are not complied with as requested.”
A marine surveyor made an inspection of the Captain Bill on August 3, 1990, pursuant to a contract for a condition and valuation report together with “such recommendations as found necessary in accordance with marine underwriting.” His report listed 14 recommendations, and the report was forwarded to NAFIMA. On September 17, NAFIMA sent a letter to N-Su-rance Outlets stating that certain of the recommendations should be complied with within 30 days and others within 60 days and that the surveyor should confirm the compliance. The letter concluded: “Any claim for loss, damage, liability, costs, or expenses arising directly or indirectly as a consequence of failing to comply with said recommendation may be precluded from cover. We trust the assured will be guided accordingly.”
Dees began making premium payments through N-Surance Outlets, Inc., on or about September 12, 1990. On December 26,1990, the Captain Bill was damaged by fire. Dees notified Aarco of the loss on December 26, and, on December 28, submitted a written claim. The surveyor inspected the vessel on January 7 and issued a report on January 10, including the following:
“It was noted at time of inspection that recommendations which were made at time of our Condition and Valuation survey conducted on this vessel on August 3, 1990, have not been accom *79 plished. As respects this fire, two recommendations which were made are pertinent. Recommendation # 7 was ‘To provide and install battery disconnect switch adjacent to 32VDC battery bank,’ and Recommendation # 12 was ‘Provide labor and material to make fuel tank sight glass tubes integral with tank.’ Had a battery disconnect switch been installed, and in the proper ‘OFF’ position when the vessel was unattended, the fire should not have occurred until the switch was in the ‘ON’ position, with Captain or crew members aboard. Also, the fire was fueled on the portside of the engine room due to the fact that the sight glass tube serving the portside aft fuel tank melted away and since the tube was not integral with the tank, with sufficient valving, et cetera, fuel from the tank was feeding the fire.”
NAFIMA therefore took the position that the fire was caused by a failure to comply with the surveyor’s recommendations and it cancelled the coverage, effective as of the date of issue.
When Dees filed this declaratory judgment action, NAFIMA filed a motion to dismiss or to stay proceedings pending arbitration. NAFIMA attached its Rule 47, “Disputes and Arbitration.” Rule 47.1.1 reads:
“In the event of any dispute, difference, conflict or controversy of whatever nature between the Association and a Member as to any ... contract or other arrangement, transaction or understanding between the Association and a Member, which cannot be resolved by the parties, such dispute shall be conclusively settled by arbitration in New York, N.Y., before three disinterested and neutral arbitrators, one selected by each party and the third by the two so selected.”
NAFIMA asserts that it is not an insurance company, but instead is a mutual insurance association made up of shipowners who are members of the Association.
In support of her petition for the writ of mandamus, Dees cites Ala.Code 1975, § 8-1-41(3): “The following obligations cannot be specifically enforced: ... An agreement to submit a controversy to arbitration.” Dees acknowledges that recent cases have held that the Federal Arbitration Act, 9 U.S.C. § 1 et seq., preempts § 8-1-41(3) with regard to contracts in interstate commerce.[1] Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); York International v. Alabama Oxygen Co., 465 U.S. 1016, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984); Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); Ex parte McKinney, 515 So.2d 693 (Ala.1987); Ex parte Costa & Head (Atrium), Ltd., 486 So.2d 1272 (Ala.1986); Ex parte Alabama Oxygen Co., 452 So.2d 860 (Ala.1984). She argues, however, that NAFI-MA is not entitled to avail itself of the Federal Arbitration Act, either because it is not qualified to do business in Alabama or because it denies that the contract is in effect.
NAFIMA is not qualified to do business in Alabama; instead, its policy was issued under the “surplus line insurance” provision of Ala.Code 1975, § 27-1Ó-20: “If certain insurance coverages cannot be procured on terms acceptable to the insureds from authorized insurers, such coverages, designated ‘surplus lines,’ may be procured from unauthorized insurers subject to” certain conditions. Dees argues that NAFIMA should not be allowed to take advantage of Alabama statutory law by writing insurance pursuant to § 27-10-20 and then to circumvent other provisions of Alabama statutory law, namely, § 8-1-41(3). We fail to see how this argument refutes the principle of preemption. As we understand the argument, its necessary consequences would prohibit any party that accepts some benefit of Alabama law from asserting that the Federal Arbitration Act is applicable to that party’s interstate contract. Such a result is obviously contrary *80 to the holdings of the United States Supreme Court and this Court in the cases cited above.
Dees also argues that NAFIMA cannot invoke the arbitration provision, made a part of the contract by the incorporation of NAFIMA’s rules, and, at the same time, deny that a contract exists. The true import of NAFIMA’s position, however, is that no coverage exists because of Dees’s failure to comply with the contractual conditions for coverage. Again, we fail to see how this argument overcomes the requirements imposed by Southland Corp. v. Keating and the other cases cited above. Similarly, Dees’s argument that NAFIMA waived the arbitration provision by not raising it until she filed this declaratory judgment action is without merit. See Ex parte McKinney, supra; Ex parte Costa & Head, supra.
Finally, Dees argues that NAFIMA is estopped to deny coverage because it accepted premiums after receiving notice of a loss. This argument does not diminish the effect of the arbitration clause. The question whether it has any merit is for the arbitrators.
WRIT DENIED.
MADDOX, ADAMS, STEAGALL and INGRAM, JJ., concur.

. A contract of maritime insurance is a maritime contract subject to admiralty jurisdiction, Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc., 639 F.2d 1168 (5th Cir.1981), and is subject to the Federal Arbitration Act, 9 U.S.C. § 2; Triton Lines, Inc. v. Steamship Mut. Underwriting Ass’n (Bermuda) Ltd., 707 F.Supp. 277 (S.D.Tex.1989).