**Stephen FEDERICO, Plaintiff,**

v.

**CHARTERERS MUT. ASSURANCE ASS'N LTD., Defendant.**

No. Civ.A. 00–398.

United States District Court, E.D. Pennsylvania.

June 13, 2001.

Order Denying Reconsideration Aug. 27, 2001.

Stanley B. Gruber, Freedman and Lorry, P.C., Philadelphia, PA, for Stephen Federico, plaintiff.

Richard Q. Whelan, Palmer, Biezup & Henderson, Philadelphia, PA, for Charterers Mutual Assurance Association Limited, defendant.

## Memorandum and Order

YOHN, District Judge.

The plaintiff, Stephen Federico ["Federico"], alleges that, under a marine protection and indemnity insurance agreement between the defendant, Charterers Mutual Assurance Association Limited ["Charterers"], and Gulf & Orient Steamship Line ["Gulf & Orient"], Charterers is required to pay a judgment entered in favor of Federico and against Gulf & Orient in a prior lawsuit.

Currently pending before the court is Charterers' motion to dismiss the amended complaint. *See* Def.'s F.R.C.P. 12(b) Mot. to Dismiss Pl.'s Compl. ["Mot. to Dismiss"] (Doc. No. 7); Am.Compl. (Doc. No. 8); Order of Nov. 27, 2000 (Doc. No. 10) (noting that parties have agreed that defendant's motion to dismiss the complaint shall be considered as a motion to dismiss the amended complaint). After considering Charterers' motion, Federico's response in opposition, Pl.'s Resp. to Def.'s Mot. to Dismiss Compl. Pursuant to F.R.C.P. 12(b) ["Pl.'s Resp."] (Doc. No. 9), Charterers' reply, Def.'s Reply Br. to Pl.'s Resp. to Mot. to Dismiss ["Def.'s Reply"] (Doc. No. 13), and various supplementary filings, I conclude that Federico is obligated to arbitrate his claim and that this action will be stayed pending the conclusion of that arbitration proceeding.

## FACTUAL BACKGROUND

On July 4, 1996, the plaintiff, Federico, sustained an injury while he was engaged in his duties as a longshoreman aboard the M/V Xiang Jiang. *See* Am.Compl ¶ 8. At the time of the injury, the M/V Xiang Jiang was berthed in Eddystone, Pennsylvania and was under charter to Gulf & Orient. *See id.* ¶¶ 7–8. Also at that time, Charterers, a mutual insurance association with its principal place of business in London, England, provided Gulf & Orient with marine protection and indemnity insurance. *See id.* ¶¶ 5–6.

In September 1996, Federico filed a federal lawsuit against Gulf & Orient and other defendants in the Eastern District of Pennsylvania. *See id.* ¶ 9; Compl. (Docket Number 96–CV–6231) (Doc. No. 8, Ex. A). Although Charterers was not a defendant in that case, Charterers participated in the defense of Gulf & Orient "by engaging counsel, paying counsel fees and costs and directing the defense of Gulf & Orient [ ], including participation in extensive discovery, up to June 16, 1997." Am.Compl. ¶ 10. On June 16, 1997, this court allowed counsel engaged by Charterers to withdraw as counsel for Gulf & Orient. *See id.* On September 17, 1998, after a trial, this court entered a judgment in favor of Federico and against Gulf & Orient in the amount of $540,671.00. *See id.* ¶ 11; Order of Sept. 17, 1998 (Docket Number 96–CV–6231) (Doc. No. 8, Ex. B). At the time the judgment was entered, Gulf & Orient was insolvent and defunct, and it remains so today. *See* Am.Compl. ¶ 12.

## STANDARD OF REVIEW

Charterers has filed the instant motion to dismiss under Federal Rule of Civil Procedure 12(b). *See* Def.'s F.R.C.P. 12(b) Mot. to Dismiss Pl.'s Compl. Charterers states five grounds for dismissal: 1) the insurance agreement between Charterers and Gulf & Orient contained a mandatory arbitration clause; 2) this court does not have subject matter jurisdiction;[1] 3) this

1. This action involves a marine insurance     contract. As a result, under 28 U.S.C.

court does not have personal jurisdiction over Charterers; 4) the Eastern District of Pennsylvania is an improper venue for this case;[2] and 5) service of process was insufficient. *See id.* at 1; ¶ 23. As the parties have done, I will treat Charterers' motion as a motion to compel arbitration and stay proceedings pending arbitration or, in the alternative, to dismiss based on lack of personal jurisdiction or improper service of process.

■ A motion to compel arbitration is treated like a motion for summary judgment. *See, e.g., Wilson v. Darden Rests., Inc.,* CIV.A. No. 99–5020, 2000 WL 150872, at *2 (E.D.Pa. Feb.11, 2000); *Childs v. Meadowlands Basketball Assoc.,* 954 F.Supp. 994, 998 n. 3 (D.N.J.1997) (citing *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51, 54 (3d Cir. 1980)). Either party to a lawsuit may file a motion for summary judgment, and it will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmovant bears the burden of persuasion at trial, the moving party may meet its initial burden and shift the burden of production to the nonmoving party "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. Once the movant has car-

ried its initial burden, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. The nonmovant must present concrete evidence supporting each essential element of its claim. *See Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,* 90 F.3d 737, 743 (3d Cir.1996). Thus, summary judgment will be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

When a court evaluates a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Additionally, "all justifiable inferences are to be drawn in [the nonmovant's] favor." *Id.* At the same time, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382 n. 12 (3d Cir.1990). The nonmovant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which he bears the burden of production. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted).

§ 1333, this court clearly has subject matter jurisdiction over this lawsuit. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 313, 75 S.Ct. 368, 99 L.Ed. 337.

**2.** Although Charterers states this ground for dismissal, it has not presented an argument for dismissal on this ground.

■ In the alternative to compelling arbitration, Charterers states two grounds for dismissal. First, Charterers argues that this case should be dismissed for lack of personal jurisdiction. *See* Fed.R.Civ.P. 12(b)(2). Once a defendant has raised a jurisdictional defense, the burden shifts to the plaintiff to demonstrate that the relevant jurisdictional requirements are met. *See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). The plaintiff must support this burden through "sworn affidavits or other competent evidence." *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir.1990) (quotation omitted). If the plaintiff relies on the complaint and affidavits to satisfy its burden, then the plaintiff meets its burden by making a prima facie showing that jurisdiction exists. *See Farino*, 960 F.2d at 1223; *Friedman v. Israel Labour Party*, 957 F.Supp. 701, 706 (E.D.Pa.1997).

■ Second, Charterers claims that Federico's service of process was insufficient. *See* Fed.R.Civ.P. 12(b)(5). If process is not served within 120 days of the filing of the complaint, the court shall dismiss the complaint. *See* Fed.R.Civ.P. 4(m). However, a court should not dismiss a complaint for failure to effect service properly if the plaintiff shows "good cause" for the failure. *See id.* The plaintiff bears the burden of establishing that he properly served the defendant. *See Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir.1993).

## DISCUSSION

Federico alleges that, under a marine protection and indemnity insurance agreement between Charterers and Gulf & Orient, Charterers is required to pay a judgment entered in a prior lawsuit in favor of Federico and against Gulf & Orient. *See* Am.Compl. ¶ 13. Federico also claims that

Charterers is obligated under the laws of the Commonwealth of Pennsylvania to pay the judgment entered in favor of Federico and against Gulf & Orient. *See id.* ¶ 14.

As noted above, I will treat Charterers' motion as a motion to compel arbitration and stay proceedings pending arbitration or, in the alternative, to dismiss. Therefore, before assessing the motion to dismiss, I will determine whether the arbitration clause contained in the marine protection and indemnity insurance agreement is applicable to the current proceedings.

### I. The Arbitration Clause

Another court faced with a similar maritime insurance case ably explained the nature of maritime insurance:

> [T]he insurer is an association of shipowners who engage in providing insurance. The association is referred to as the club, and the insured is the member. To obtain coverage, the member enrolls a vessel with the club. The rules of the club and the quotation are the contract of insurance. The member's fee for obtaining the coverage is the fee plus assessments (calls) that the club makes if the claims exceed the pool accumulated through the annual assessments. A member's assessment is based on the size and nature of its fleet. Because a call is possible, the wealth of the members is of crucial importance to the club and its members.

*Triton Lines, Inc. v. Steamship Mut. Underwriting Ass'n*, 707 F.Supp. 277, 278 (S.D.Tex.1989).

Charterers is a mutual insurance association or club. At the time of Federico's injury, Gulf & Orient was a member of the Charterers' club, and M/V Xiang Jiang was a vessel enrolled in the Charterers' club by Gulf & Orient. Federico does not

dispute that the rules of the club at the time of Federico's injury aboard the M/V Xiang Jiang were the 1996 Rules of the Charterers Mutual Assurance Association Limited ["1996 Rules"]. *See* Mem. of Law in Opp'n to Def.'s Mot. to Dismiss Pl.'s Compl. Pursuant to F.R.C.P. 12(b) ["Pl.'s Mem."] 7 (Doc. No. 9); 1996 Rules of the Charterers Mutual Assurance Association Limited, Aff. of Christopher James Else ["1996 Rules"], Ex. A (Doc. No. 7 Ex. 2). Thus, the 1996 Rules form the basis of the insurance contract between Charterers and Gulf & Orient.

Rule 43 of the 1996 Rules is a mandatory arbitration provision. Rule 43 reads as follows:

(A) Any claim by the Association against a Member in respect of Contributions due to the Association shall be referred to the arbitration in London of a sole Legal Arbitrator in accordance with the provisions of paragraph (C) hereof.

(B) If any dispute or difference shall arise between a Member (including a past Member) and the Association out of or in connection with these Rules or any contract between them or as to the rights or obligations of the Association or the Member thereunder or in connection therewith, such difference or dispute shall be resolved as follows:

(i) In the first instance such difference or dispute shall be referred to and adjudicated upon by the Directors. Such reference and adjudication shall be on written submissions only.

(ii) If the Member in such dispute or difference does not accept the decision of the Directors, or if the Directors fail to adjudicate within three months of the dispute or difference being referred to them, the dispute or difference shall be referred to the arbitration in London of a sole Legal Arbitrator, unless the Directors in their absolute discretion decide that such dispute or difference shall be decided by the English High Court.

(C)(i) The Arbitrator to whom any such claim, dispute or difference is referred under paragraphs (A) or (B) shall be a barrister practising at the Commercial Bar in London. The submission to arbitration and all the proceedings therein shall be subject to the provisions of the Arbitration Acts 1950 to 1979 or any statutory re-enactment or modification thereof. The Arbitrator shall have power to admit any evidence whether legally admissible or not.

(ii) If within 21 days of one party calling on the other to agree [sic] the identity of arbitrator no agreement has been reached, then either party shall be entitled to request the President for the time being of the London Maritime Arbitrators' Association to appoint a sole Legal Arbitrator to resolve the claim, dispute or difference and an arbitrator so appointed shall have all of the powers of an arbitrator agreed and appointed by the Association and the Member.

(iii) Subject to the foregoing provisions of this Rule, the obtaining of an arbitration award as provided by this Rule shall be a condition precedent to the right of any Member to bring or maintain any action, suit or other legal proceedings against the Association.

(iv) The sole obligation of the Association to the Member under these Rules or otherwise howsoever in respect of any such dispute or differences shall be to pay such sum as may be directed by such an award or judgment as the case may be.

1996 Rules, Ex. A, Rule 43, p. 33 (Doc. No. 7 Ex. 2).

## II. Motion to Compel Arbitration

Charterers claims that this court should compel arbitration because Federico's only viable claims are based on the marine protection and indemnity insurance contract between Charterers and Gulf & Orient and, thus, those claims are subject to the mandatory arbitration clause of Rule 43. *See* Mem. of Law in Support of Def.'s F.R.C.P. 12(b) Mot. to Dismiss Pl.'s Compl. ["Def.'s Mem."] 6–10 (Doc. No. 7). Charterers cites several cases to support the proposition that, "[w]hen a plaintiff bases a cause of action on alleged obligations under a contract of marine insurance[,] he is bound by all of the terms and conditions contained in the contract, including a mandatory arbitration clause...." *Id.* at 8–9 (citing *Aasma v. American Steamship Owners Mut. Prot. and Indem. Ass'n, Inc.*, 95 F.3d 400, 405 (6th Cir.1996); *Cheshire Place Assocs. v. West of England Ship Owners Mut. Ins. Ass'n*, 815 F.Supp. 593, 597 (E.D.N.Y. 1993); *London Steamship Owners Mut. Ins. Ass'n v. M/V DIAVOLEZZA*, Civ. A. No. 91–6984, 1991 WL 240737 (E.D.Pa. Nov.12, 1991); *Triton Lines, Inc.*, 707 F.Supp. at 279; *Wells Fargo Bank Int'l Corp. v. London Steam–Ship Owners' Mut. Ins. Ass'n*, 408 F.Supp. 626, 630 n. 10 (S.D.N.Y.1976)). Charterers contends that this principle applies even if the claimant was not a party to the insurance contract. *See id.* at 9 (citing *In re Oil Spill by the "Amoco Cadiz" Off Coast of France*, 659 F.2d 789, 794 (7th Cir.1981); *Cheshire Place Assocs.;* 815 F.Supp. at 597; *Interpool Ltd. v. Through Transport Mut. Ins. Ass'n Ltd.*, 635 F.Supp. 1503, 1504–05 (S.D.Fla.1985); *Banque de Paris et des Pays–Bas v. Amoco Oil Co.*, 573 F.Supp.

1464, 1466 (S.D.N.Y.1983); *Wells Fargo Bank Int'l Corp.*, 408 F.Supp. at 629). Charterers avers that the arbitration clause is enforceable under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 2, 202, and federal maritime law, *see id.* at 10–14 (citing *Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER*, 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995); *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *M/S BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)), or, in the alternative, given the choice of law provision in Rule 41,[3] under English law. *See id.* at 14–15 (citing *Firma C–Trade S.A. v. Newcastle Prot. and Indem. Ass'n (The FANTI); Socony Mobile Oil Co., Inc. v. West of England Shipowners Mutual Ins. Ass'n (London) Ltd. (The PADRE ISLAND)*, 2 All E.R. 705 (1990)).

■ Chapter Two of the FAA codifies the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ["The Convention"]. *See* 9 U.S.C. § 201. The Convention governs the enforcement of arbitration agreements arising out of maritime contracts when at least one of the parties to the contract is not an American citizen. *See* 9 U.S.C. §§ 2, 202. Marine protection and indemnity insurance is a maritime contract within the meaning of 9 U.S.C. § 2. *See Triton Lines, Inc.*, 707 F.Supp. at 278 ("A contract of protection and indemnity insurance covering a vessel between an American insured (member) and a foreign insurer (club) is a maritime contract.") (citing *Insurance Co. v. Dunham*, 78 U.S. (11 Wall.) 1, 20 L.Ed. 90 (1870)). Because Gulf & Orient was an an American insured, *see* Compl. ¶ 3 (Docket

---

**3.** Rule 41, the choice of law provision, reads as follows: "These Rules and any contract of insurance between the Association and a Member shall be governed by and construed in accordance with English Law." 1996 Rules, Ex. A, Rule 41, p. 33 (Doc. No. 7 Ex. 2).

Number 96–CV–6231) (Doc. No. 8, Ex. A), and Charterers is a foreign insurer, *see* Am.Compl. ¶ 5, the FAA governs the enforcement of the arbitration clause found in Rule 43 of the insurance contract between Charterers and Gulf & Orient.

Federico counters that he is not bound by the terms of the mandatory arbitration clause for three reasons. *See* Pl.'s Mem. 8. First, Federico contends that he is not bound by the arbitration clause because his claim is not based exclusively on the insurance contract between Charterers and Gulf & Orient. Specifically, Federico claims that Charterers is obligated under Pennsylvania law to pay the judgment entered in favor of Federico and against Gulf & Orient. *See id.* at 8–10. Second, Federico claims that the arbitration clause is not applicable to this lawsuit because Federico was not a party to the insurance contract. *See id.* at 11–12. Third, Federico claims that, even if the arbitration clause were applicable, Charterers waived its right to compel arbitration "by substantially participating in the litigation of the underlying case involving [ ] Gulf & Orient." *Id.* at 8. *See id.* at 13–14.

## III. Applicability of the Arbitration Clause

### A. State Law Claims

Federico claims that his cause of action is not based exclusively on the contract between Charterers and Gulf & Orient because Charterers is also obligated under Pennsylvania law to pay the judgment entered in favor of Federico and against Gulf & Orient. In particular, Federico argues that 40 P.S. § 117 and 42 Pa.C.S.A. § 8371 provide bases for an action against Charterers. *See* Pl.'s Mem. 8–10. Furthermore, Federico claims that, under Pennsylvania law, he can bring a garnishment proceeding against Charterers. *See id.* at 10. In other words, Federico is contending that Pennsylvania law allows him to bring a direct action against Charterers.

Charterers claims that Pennsylvania law is irrelevant to these proceedings because the English choice of law provision of the 1996 Rules would be enforced under both federal maritime law and English law. *See* Def.'s Reply 1. Moreover, Charterers points out that, even if Pennsylvania law were applicable to this case, none of the potential sources of an independent right of recovery under Pennsylvania law cited by Federico applies to the circumstances of this case. *See id.* at 1–2.

"In the field of marine insurance, if there is no existing federal rule, the courts will [generally], like Congress, leave the regulation of maritime insurance to the states." 1 Benedict on Admiralty § 113 (7th rev. ed.2000). *See Wilburn Boat Co.,* 348 U.S. at 320–21, 75 S.Ct. 368. Several circuit courts have held that "Federal admiralty law neither authorizes nor forecloses a third party's right to directly sue an insurance company." *Morewitz v. West of England Ship Owners Mut. Prot. and Indem. Ass'n,* 62 F.3d 1356, 1362 (11th Cir.1995) (citing *Steelmet, Inc. v. Caribe Towing Corp.,* 779 F.2d 1485, 1487 (11th Cir.1986)). *See Kiernan v. Zurich Co.,* 150 F.3d 1120, 1121–22 (9th Cir.1998); *Aasma,* 95 F.3d at 403–04 ("For the purposes of the *Wilburn Boat* analysis, we find that no clearly articulated federal principle either permits or prohibits the right of direct action sought by plaintiffs."). Therefore, except under unusual circumstances such as those presented in *Aasma,* "[a] state's direct action statute is given effect in admiralty actions." 1 Benedict on Admiralty § 113 (7th rev. ed.2000). In order to determine whether Federico has a independent right of recovery against Charterers, I will examine whether Pennsylvania law authorizes direct actions under the circumstances presented by this case.

**1. 40 P.S. § 117**

■ The Pennsylvania direct action statute, 40 P.S. § 117, provides as follows:

No policy of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, or against loss or damage to property caused by animals or by any vehicle drawn, propelled or operated by any motive power and for which loss or damage the person insured is liable, *shall hereafter be issued or delivered in this State by any corporation, or other insurer, authorized to do business in this State,* unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured person, or his or her personal representative in case death results from the accident, because of such insolvency or bankruptcy, then an action may be maintained by the injured person, or his or her personal representative, against such corporation, under the terms of the policy, for the amount of the judgment in the said action, not exceeding the amount of the policy.

40 P.S. § 117 (emphasis added). Federico does not allege that the insurance policy involved in this case was issued or delivered in Pennsylvania or that Charterers was even authorized to do business in Pennsylvania. Indeed, although it is not binding at this stage of the proceedings, all of the information submitted by Charterers is to the contrary. *See* Mot. to Dismiss ¶¶ 24–25. Because the Pennsylvania direct action statute applies only to policies "issued or delivered" in Pennsylvania, 40 P.S. § 117 is inapplicable to the case currently before the court.

**2. 42 Pa.C.S.A. § 8371**

■ 42 Pa.C.S.A. § 8371 permits recovery in an action on an insurance policy "if the court finds that the insurer acted in *bad faith* toward the *insured.*" 42 Pa. C.S.A. § 8371 (emphasis added). This statute is inapplicable to the current proceedings for two reasons. First, 42 Pa. C.S.A. § 8371 only grants standing to an individual who is an "insured" under the insurance policy in question, *see Klinger v. State Farm Mut. Auto. Ins. Co.,* 895 F.Supp. 709, 715–16 (M.D.Pa.1995), and Federico is not an "insured" under the 1996 Rules. *See* 1996 Rules, Ex. A, Definitions, p. 4–5 (Doc. No. 7 Ex. 2). Second, Federico has not alleged bad faith in his amended complaint.

**3. Garnishment Proceeding**

Federico alleges that "Pennsylvania law [ ] permits a verdict winner to assert in a garnishment proceeding, the insured's claim against the insurer *as an assignee* of the insured." Pl.'s Mem. 10 (citing *Alfiero v. Berks Mut. Leasing Co.,* 347 Pa.Super. 86, 500 A.2d 169, 171 (1985)) (emphasis added). However, as Charterers has pointed out, Federico has neither commenced nor alleged a garnishment proceeding, and no writ of execution has been issued or served. *See* Def.'s Reply 8. Moreover, Federico has not alleged that he received an assignment from Gulf & Orient of its rights under the insurance agreement. Because this case does not involve an attachment or garnishment proceeding, Federico cannot assert that he has a right to recovery under this aspect of Pennsylvania law.

Therefore, I conclude that Federico has failed to assert an independent right of

recovery against Charterers under Pennsylvania law. Thus, his cause of action rests exclusively on the terms of the marine protection and indemnity insurance agreement issued to Gulf & Orient.

### B. Applicability of Arbitration Clause to Third Party Claims

■ As noted above, Charterers claims that Federico is bound by the mandatory arbitration clause of the 1996 Rules because his cause of action is based on Charterers' alleged obligations under the marine insurance contract. *See* Def.'s Mem. 8–9. Charterers contends that this principle applies to these proceedings even though Federico was not a party to the insurance contract. *See id.* at 9. Charterers avers that the arbitration clause is enforceable either under the FAA and federal maritime law, or, in the alternative, under English law. *See id.* at 10–15.

However, Federico claims that the arbitration clause is not applicable to this lawsuit because Federico was not a party to the insurance contract. *See id.* at 11–12. In particular, Federico points out that Rule 43 "refers to disputes between a 'member' and the 'association,' " and that Federico is not a 'member' " as the term is defined in the 1996 Rules. *Id.* at 12.

As noted above, the FAA governs the enforcement of the arbitration clause found in Rule 43 of the insurance contract between Charterers and Gulf & Orient. Under the FAA,

A written provision in any maritime transaction [or commercial contract] ... to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Whether an arbitration agreement is valid and enforceable under the FAA is a question of federal substantive law. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–05, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). In this case, the question is whether a party who did not agree to a mandatory arbitration clause may still be compelled to arbitrate his claim when that party's claim is based exclusively on the insurance contract that contains the mandatory arbitration clause.

Although Federico was not a party to the insurance contract, his cause of action is based exclusively on the insurance contract. In other words, Federico is attempting to "stand in the shoes" of the original contracting party, Gulf & Orient, to derive the benefit of the insurance contract between Gulf & Orient and Charterers. "The law is clear that a third party beneficiary is bound by the terms and conditions of the contract that it attempts to invoke. 'The beneficiary cannot accept the benefits and avoid the burdens or limitations of a contract.' " *Interpool Ltd.*, 635 F.Supp. at 1505 (quoting *Trans–Bay Eng'rs & Builders, Inc. v. Hills*, 551 F.2d 370, 378 (D.C.Cir.1976)).

In the contract on which this lawsuit is based, Rule 43 clearly states that arbitration is a "condition precedent" to bringing any legal proceedings against Charterers. *See* 1996 Rules, Ex. A, Rule 43(C)(iii), p. 33 (Doc. No. 7 Ex. 2). When, as in this case, "a plaintiff 'bases its right to sue on the contract itself, not upon a statute or some other basis outside the contract, the provision requiring arbitration as a condition precedent to recovery must be observed.' " *Cheshire Place Assocs.*, 815 F.Supp. at 597 (quoting *Wells Fargo Bank Int'l Corp.*, 408 F.Supp. at 630 n. 10). This conclusion has

been reached by federal courts in cases involving agents, assignees, and third party beneficiaries. *See, e.g., In re Oil Spill by the "Amoco Cadiz" Off Coast of France,* 659 F.2d at 794; *Interpool Ltd.,* 635 F.Supp. at 1504–05; *Banque de Paris et des Pays–Bas,* 573 F.Supp. at 1469 ("[C]ase law supports the basic principle that an assignee or other party whose rights are premised on a contract is bound by the remedial provisions bargained for between the original parties to the contract.").

The cases Federico cites to support his claim that he is not bound by the mandatory arbitration agreement are easily distinguishable. First, unlike in this case where Federico's claim is based exclusively on the insurance contract, in *Ocean Eagle Limitations Proceedings,* the plaintiff's cause of action was based on Puerto Rico's direct action statute. *See Ocean Eagle Limitations Proceedings,* 1974 AMC 1629 (D.P.R.). Similarly, in *In re Talbott Big Foot, Inc.,* the plaintiff's cause of action was based on Louisiana's direct action statute. *See in Re Talbott Big Foot, Inc.,* 887 F.2d 611 (5th Cir.1989).

Under English law, I would reach the same result. *See Aasma,* 95 F.3d at 405 (citing England's Third Party Act of 1930; *Firma C–Trade S.A. v. Newcastle Prot. and Indem. Ass'n (The FANTI); Socony Mobile Oil Co., Inc. v. West of England Shipowners Mutual Ins. Ass'n (London) Ltd. (The PADRE ISLAND),* 2 All E.R. 705 (1990)).

C. Waiver

Finally, Federico claims that Charterers has waived its right to compel arbitration. *See* Pl.'s Mem. 13–14. Specifically, Federico contends that Charterers waived its right to compel arbitration by failing to attempt to compel arbitration during the litigation between Federico and Gulf &

Orient. *See id.* As a result of Charterers' failure to invoke its right to compel arbitration at that time, Federico argues that he was forced to expend considerable time and expense obtaining a judgment against Gulf & Orient. *See id.* at 13.

■ "Consistent with the strong preference for arbitration in federal courts, waiver 'is not to be lightly inferred.'" *Paine-Webber Inc. v. Faragalli,* 61 F.3d 1063, 1068 (quoting *Gavlik Const. Co. v. H.F. Campbell Co.,* 526 F.2d 777, 783 (3d Cir. 1975)). Generally, waiver will only be found when 1) "the demand for arbitration came long after the suit commenced," 2) "both parties ha[ve] engaged in extensive discovery," and 3) the party alleging waiver has been prejudiced by the delay. *Id.* at 1068–69 (quotation omitted). Given the strong federal policy in favor of arbitration, any doubts concerning an allegation of waiver should be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■ The fact that Charterers participated in the underlying lawsuit is irrelevant to the question of waiver because Charterers was not a party to that litigation and, moreover, Federico has failed to establish that the underlying lawsuit involved an arbitrable issue. *See Seguros Banvenez, S.A. v. S/S Oliver Drescher,* 761 F.2d 855, 862 (2d Cir.1985) ("Waiver may not be inferred on the basis of conduct relating to non-arbitrable issues."); *Dickinson v. Heinold Sec., Inc.,* 661 F.2d 638, 642 (7th Cir.1981) ("[N]o waiver of the right to arbitrate can occur from conducting discovery on non-arbitrable claims."); *Central Jersey Freightliner, Inc. v. Freightliner Corp.,* 987 F.Supp. 289, 301 (D.N.J.1997) ("Waiver cannot be inferred from conduct relating to non-arbitrable issues."). As a result, Federico has failed to

convince the court that any of the three circumstances necessary to show waiver is present in this case. First, process was served upon Charterers on September 18, 2000, and Charterers filed its motion to compel arbitration approximately one month later, on October 26, 2000. *See* Aff. of Patricia Kane (Doc. No. 5); Mot. to Dismiss. Second, although free to do so, the parties have apparently chosen not to engage in extensive discovery pending disposition of this motion. Third, the only allegation of prejudice Federico has made involves his lawsuit against Gulf & Orient. There can be no claim of prejudice in this case because Charterers has almost immediately sought to compel arbitration. Because Federico has failed to show unnecessary delay, extensive discovery, or any prejudice whatsoever, a finding that Charterers has waived its right to compel arbitration is clearly unwarranted.

For the above stated reasons, I will order the action stayed [4] pending the outcome of arbitration in, as Rule 43 specifies, England.

IV. Motion to Dismiss

Because I have found that the mandatory arbitration clause is applicable to the current proceedings, I will not address the question of whether this court has personal jurisdiction over Charterers or whether service of process was sufficient.

## CONCLUSION

Because Federico's third party cause of action is based exclusively on the marine protection and indemnity insurance contract between Charterers and Gulf & Orient, the mandatory arbitration clause in that contract is applicable to these proceedings. Having concluded that Charter-

ers has not waived its right to compel arbitration, I will order the action stayed pending the outcome of arbitration in England.

## Memorandum and Order on Reconsideration

On June 25, 2001, the plaintiff, Stephen Federico, filed a motion for reconsideration or, in the alternative, for the entry of an order allowing an immediate appeal of the court's June 13, 2001 order. *See* Pl.'s Mot. (Doc. No. 19). In that order, the court granted the motion to compel arbitration and stay proceedings pending arbitration filed by the defendant, Charterers Mutual Assurance Association Limited ["Charterers"]. *See* June 13, 2001 Order (Doc. No. 18). Federico argues that the court's June 13, 2001 order should be reconsidered because it would be prohibitively expensive for Federico to arbitrate his claim in England, and, therefore, the arbitration agreement is unenforceable. *See* Pl.'s Mot. 2. In the alternative, Federico argues that the court should enter an order allowing an immediate appeal of the court's order pursuant to 28 U.S.C. § 1292(b). *See* Pl.'s Mot. 3. For the following reasons, I will deny Federico's motion.

## BACKGROUND

The history of this dispute is outlined in the June 13, 2001 order. That history will only be repeated here to the extent that it is necessary to resolve the issues before the court.

Federico was injured while working aboard a ship that was under charter to Gulf & Orient Steamship Line ["Gulf & Orient"]. *See* Am. Compl. ¶¶ 7–8. At that time, Charterers provided Gulf & Orient

---

4. A stay pending arbitration is the proper method of approval under the Convention. *See Rhone Mediterranee Compagnia Francese*

*Di Assicurazioni E Riassicurazoni v. Lauro,* 555 F.Supp. 481, 486 (D.Vi.1982), *aff'd,* 712 F.2d 50 (3d Cir.1983).

with marine protection and indemnity insurance. *See id.* ¶¶ 5–6.

On September 17, 1998, after a trial, this court entered a judgment in favor of Federico and against Gulf & Orient in the amount of $540,671.00. *See id.* ¶ 11; Order of Sept. 17, 1998 (Docket Number 96–CV–6231) (Doc. No. 8, Ex. B). Because Gulf & Orient is insolvent and defunct, Federico filed this lawsuit against Charterers to attempt to collect that judgment. *See* Am. Compl. ¶ 12. Federico alleges that, under the marine protection and indemnity insurance agreement between Charterers and Gulf & Orient, Charterers is required to pay the judgment entered in favor of Federico and against Gulf & Orient. *See id.* ¶ 13. Federico also claims that Charterers is obligated to pay the judgment under the laws of the Commonwealth of Pennsylvania. *See id.* ¶ 14.

In this court's June 13, 2001 order, I treated Charterers' motion to dismiss as a motion to compel arbitration and stay proceedings pending arbitration. After concluding that Federico's third party cause of action was based exclusively on the marine protection and indemnity insurance contract between Charterers and Gulf & Orient, I concluded that the mandatory arbitration clause in that contract was applicable to these proceedings. Then, after concluding that Charterers had not waived its right to compel arbitration. I ordered the action stayed pending the outcome of arbitration in England.

**STANDARD OF REVIEW**

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly."

*Burger King Corp. v. New England Hood & Duct Cleaning Co.,* No. 98–3610, 2000 WL 133756, at *2 (E.D.Pa. Feb.4, 2000) (quotation omitted). As a result, district courts will grant a motion for reconsideration in any of three situations: 1) the need to correct a clear error of law or to prevent manifest injustice; 2) the availability of new evidence not previously available; or 3) an intervening change of controlling law. *See NL Indus., Inc. v. Commercial Union Ins. Co.,* 65 F.3d 314, 324 n. 8 (3d Cir.1995); *New Chemic, Inc. v. Fine Grinding Corp.,* 948 F.Supp. 17, 18–19 (E.D.Pa.1996).

**DISCUSSION**

I.  Motion for Reconsideration

Federico argues that the court's June 13, 2001 order should be reconsidered because it would be prohibitively expensive for Federico to arbitrate his claim in England, and, therefore, the arbitration agreement is unenforceable. *See* Pl.'s Mot. 2. In particular, Federico points out that the court did not consider whether the enforcement of the arbitration clause would be unconscionable due to the "prohibitive cost" it would impose on Federico. *See id.* at 3. In support of this argument, Federico has submitted basic evidence about his yearly income. *See* Federico Affidavit (Doc. No. 20).

▮▮▮▮ Federico did not raise this argument in his opposition to Charterers' motion to compel arbitration and stay proceedings pending arbitration. Furthermore, the evidence that Federico has submitted in support of this argument is not newly discovered evidence. As noted above, "[t]he purpose of a motion for reconsideration is to correct manifest errors or law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). As a

result, "[a] motion for reconsideration is not an opportunity for a party to present previously available evidence or new arguments." *Federal Deposit Ins. Corp. v. Parkway Executive Office Center,* Civ.A. 96–121, Civ. A. 96–122, 1997 WL 611674, at *1 (E.D.Pa. Sept.24, 1997)(citing *Corrigan v. Methodist Hosp.,* 885 F.Supp. 127, 127 (E.D.Pa.1995)); *see McNeal v. Maritank Philadelphia, Inc.,* No. CIV. A. 97–0890, 1999 WL 80268, at *4 (E.D.Pa. Jan.29, 1999)("A motion for reconsideration may not be used to present a new legal theory for the first time or to raise new arguments that could have been made in support of the original motion."). Thus, I am precluded from considering Federico's affidavit and from acting on Federico's new argument.

■ Moreover, it is clear that Federico's new argument is untenable because a contract can only be found to be unconscionable based on conditions present at the time of the contract's formation. *See* 13 Pa.C.S.A. § 2302(a). Because the arbitration agreement is found within an insurance contract between Charterers and Gulf & Orient, the agreement can only be unconscionable with respect to those parties. Therefore, Federico's inability to arbitrate his claim in England would be irrelevant to the question of whether the insurance contract between Charterers and Gulf & Orient is unconscionable.

Even if I were to consider whether the contract was unconscionable, and even if Federico's ability to arbitrate his claim in England were relevant to the question of whether the insurance contract is unconscionable, I would still deny Federico's motion for reconsideration. I would deny the motion because Federico has failed to show that the cost of arbitration in England would be prohibitive. In his affidavit, Federico made no proffer except as to his residence and employment. *See* Federico Affidavit (Doc. No. 20). Federico has not provided the court with any information regarding his inability to obtain counsel who, given that Federico is attempting to collect a $540,671.00 judgment, would arbitrate this case in England on a contingency fee basis. Furthermore, Federico has not proffered any information on the costs of arbitration for which he might be responsible. Given that arbitration should presumably only require Federico to be in England for a day or two, the cost of attending the arbitration would not be substantial, particularly in light of the fact that Federico is attempting to collect a $540,671.00 judgment.

For the above stated reasons, I will deny Federico's motion for reconsideration.

## II. 28 U.S.C. 1292(b)

■ In the alternative, Federico argues that the court should enter an order allowing an immediate appeal of the court's order pursuant to 28 U.S.C. § 1292(b). *See* Pl.'s Mot. 3. Section 1292(b) provides that:

When a district judge, in making in a civil action an order not otherwise appealable [ ], shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order"

Therefore, in order to obtain permission to appeal this court's June 13, 2001 order, Federico must show that: 1) the order involved a controlling question of law; 2) there are substantial grounds for a difference of opinion on that question; and 3) the interlocutory appeal of the question may materially advance the ultimate termination of the litigation.

A. Controlling Question of Law

Federico alleges that this court's June 13, 2001 order involves the following controlling question of law: whether a forum selection clause contained in an arbitration agreement is enforceable against an individual who was not a party to the agreement. *See* Pl.'s Mot. 6–7. "In the Third Circuit, a controlling issue of law is one that would result in a reversal of a judgment after final hearing." *Federal Deposit Ins. Corp.*, 1997 WL 611674, at *3 (quotation omitted). *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974).

This court's June 13, 2001 order is dependent on the conclusion that Federico is subject to the arbitration clause contained in the insurance contract between Charterers and Gulf & Orient even though Federico was not a party to that contract. As a result, Federico has shown that this court's June 13, 2001 order involves a controlling question of law.

B. Substantial Grounds for Difference of Opinion

Federico alleges that there are substantial grounds for a difference of opinion on the question of whether a forum selection clause contained in an arbitration agreement is enforceable against an individual who was not a party to the agreement. *See* Pl.'s Mot. 7. In particular, Federico claims that the cases cited by the Court in support of its decision "are clearly distinguishable from the case at bar" because the third parties beneficiaries involved in those cases were "corporate entities" as opposed to "working individual(s)" like Federico. *Id.*

The assertion of this artificial distinction between "corporate entities" and "working individual(s)" is insufficient to show that there are substantial grounds for a difference of opinion on the controlling question of law involved in the June 13, 2001 order. And, moreover, Federico has failed to point out any conflicting precedents to the court. Therefore, Federico has failed to show that there is a substantial ground for a difference of opinion on the controlling question of law involved in the June 13, 2001 order.

C. Materially Advance the Ultimate Termination of the Litigation

Federico has failed to make any allegations as to how the immediate appeal of the controlling question of law involved in this case would materially advance the ultimate termination of this litigation. Therefore, Federico has failed to show that the interlocutory appeal of the controlling question of law may materially advance the ultimate termination of the litigation.

## CONCLUSION

Federico argues that the court's June 13, 2001 order should be reconsidered because it would be prohibitively expensive for Federico to arbitrate his claim in England. Because this is the first time that Federico has raised this argument, I am precluded from acting on it. Moreover, even if I were to consider whether the contract was unconscionable, I would still deny Federico's motion. Therefore, I will deny Federico's motion for reconsideration.

In the alternative, Federico argues that the court should enter an order allowing an immediate appeal of the court's order pursuant to 28 U.S.C. § 1292(b). Because Federico has failed to show that: 1) there are substantial grounds for a difference of opinion on the controlling question of law involved the June 13, 2001 order, and 2) interlocutory appeal of the question may materially advance the ultimate termination of the litigation, I will deny his

motion for entry of an order pursuant to 28 U.S.C. § 1292(b).